HELEN KOSTEN, Indiv. and as Special Adm'r of the Estate of Victor Kosten, Deceased, Plaintiff-Appellant, v. ST. ANNE'S HOSPITAL *et al.*, Defendants-Appellees (Dr. Thomas J. Moore, Defendant).

First District (2nd Division)   No. 83—3048

Opinion filed April 23, 1985.

Paul R. O'Malley and Thomas D. Nissen, both of Chicago, for appellant.

Stanley J. Davidson, E. Michael Kelly, Debra S. Puchowitz, and Robert Marc Chemers, all of Pretzel & Stouffer, Chartered, of Chicago, for appellees.

JUSTICE BILANDIC delivered the opinion of the court:

Helen Kosten, plaintiff-appellant, filed a medical malpractice suit against the defendants after her husband died while he was a patient at St. Anne's Hospital. The defendants-appellees, St. Anne's Hospital, Dr. Shoai and Dr. Sung, moved for summary judgment principally based on the deposition of their expert witness, Dr. Peter Rosen. The appellant filed a response to the motion that contained an affidavit by Dr. Jack Morgan, but the trial court struck the affidavit as being legally insufficient. As a result, the court found that there was no issue of material fact and granted the defendants' motion for summary judgment. The court also denied Kosten's motion to vacate the judgment. This appeal followed.

The issues before this court are: (1) whether the trial court erred in granting the defendants' motion for summary judgment; and (2) whether the trial court erred in denying Kosten's motion to vacate the judgment. For the reasons given below, we affirm the rulings of the lower court.

On May 16, 1980, the appellant's husband, the decedent Victor Kosten, was brought to the emergency room of St. Anne's Hospital. Dr. Thomas J. Moore, who is not involved in this appeal, diagnosed the decedent as having alcoholic withdrawal and delirium tremens. Drs. Moore, Sung and Shoai prescribed a course of treatment consisting of medication, hydration and application of leather straps. The doctors' orders were carried out by the staff of the hospital.

Three days later, on May 19, 1980, Victor Kosten died of acute pulmonary edema and congestion due to chronic liver disease. Helen Kosten later filed suit. She claimed that the defendant physicians had: (1) failed to diagnose the decedent's condition properly; (2) failed to treat his delirium tremens appropriately; (3) gave the decedent a fluid overload, resulting in his pulmonary edema and cardiovascular failure; (4) failed "to do the appropriate tests during fluid therapy"; and (5) failed to treat the decedent for his complications.

In her complaint against the hospital, Kosten claimed that it had failed to provide adequate supervision, failed to monitor the decedent's condition, and failed to provide adequate medical care and treatment.

During discovery, attorneys for all the parties (except Dr. Shaoi) deposed Dr. Peter Rosen in Denver, Colorado, on May 4, 1982. The deposition of Dr. Rosen is crucial because it later became the basis for the defendants' motion for summary judgment. Dr. Rosen, an expert in the treatment of alcoholism and related disorders, testified that the decedent would have died regardless of any change in treatment. Dr.

Rosen testified as follows:

"Q. [By Mr. Howser, attorney for St. Anne's]: As far as the patient['s] care and management, is there anything that could have been done differently that would have in your opinion prevented this patient's death?

A. No.

Q. What is the basis for your opinion, Doctor?

A. I think that this patient underwent a down hill course from his liver failure and his alcohol withdrawal, and while I personally would have used a different hydrational schedule, I don't think that it would have made a bit of difference in this case[,] nor do I find the dosage schedule of drugs and medications that was used to be negligent, just different from what I would have done.

\* \* \*

Q. [by plaintiff's attorney]: You are not saying, Doctor, that had all the things that I just mentioned, things that you would have done been done in this case, that this patient had no chance of survival?

A. That is precisely what I am saying. I think that even had more aggressive therapy been carried out for this patient, he had too many systems failing to salvage him. You might have been able to cure the pneumonia, but there is no evidence that he died of sepsis.

I don't think that you would have been able to prevent his liver failure or his cerebral failure, and I very much doubt if you would have been able to prevent his pulmonary failure even without aggressive therapy. He might have died sooner.

\* \* \*

I think what we are dealing with is a dying organism which took him three or four days to complete the act of dying."

Armed with this testimony, St. Anne's Hospital and Dr. Sung filed a motion for summary judgment on July 7, 1982. Dr. Shoai later joined in the motion. A hearing on the motion was postponed several times, and on April 15, 1983, the trial court ordered that all discovery was to be completed by June 15, 1983.

At the June 15 hearing, Kosten requested another continuance to extend discovery. She disputed the finding that her husband had died of alcoholism but refused, when asked by the court, to suggest a cause of death because "[t]hat's our trial strategy and theory [that] I wouldn't like to divulge." The court reluctantly granted a "final" continuance of 30 days.

The day before the scheduled "final" hearing date, July 14, Kosten filed a response to the motion for summary judgment by attaching an affidavit by Dr. Jack Morgan. The four-paragraph affidavit stated that Dr. Morgan was a licensed physician practicing in Chicago who specialized in internal medicine. Dr. Morgan also stated that the defendant physicians had:

"departed from the acceptable standards of medical practice in the management of the deceased, as follows:

A. In failing to attend and properly treat the decedent, Victor Kosten, for a period of approximately 36 hours after the said decedent experienced *a significant change* in his medical status.

B. In failing to fully utilize *appropriate diagnostic measures* and to employ aggressive diagnostic medical therapeutics in light of signs and symptoms of deteriorating cardiovascular function." (Emphasis added.)

Approximately one year elapsed between the filing of defendants' motion for summary judgment, on July 7, 1982, and the filing of plaintiff's answer and counteraffidavit of Dr. Morgan, on July 14, 1983. This would appear to be an abnormally long delay. However, in medical malpractice cases, the courts recognize the reluctance of medical experts to testify for plaintiffs and the difficulty in obtaining such testimony. *Stringer v. Zacheis* (1982), 105 Ill. App. 3d 521, 523, 434 N.E.2d 50.

At the hearing on July 15, the court asked counsel for plaintiff to elaborate on the "significant change" and the failure to utilize the "appropriate diagnostic measures." Counsel was faced with the option of requesting leave to file a supplemental affidavit or stand by the affidavit that was filed. Plaintiff's responses did not satisfy the court, so it sustained defendants' motion to strike Dr. Morgan's affidavit. Without a counteraffidavit on file and no request for leave to file another affidavit, the court properly granted defendants' motion for summary judgment.

On August 12, Kosten filed a motion to vacate the judgment and attached a revised affidavit by Dr. Morgan. In it, he stated that his professional experience included the care of alcoholics and that the defendant physicians had failed to "employ aggressive medical therapeutics including intensive care, inhalation therapy, use of diuretics and fluid intake reduction." Although the revised affidavit was more specific, the statements and conclusions remained essentially the same as in the original.

At the hearing on the motion to vacate, the court asked plaintiff's

counsel:

> "THE COURT: Mr. Nissen, is there anything in the second affidavit that wasn't known to [Dr. Morgan] at the time he made out the first affidavit which was presented in *** opposition to the motion?
>
> MR. NISSEN: I don't think there is anything in the second affidavit that was not also known in the first affidavit. The problem with the first affidavit, there was a draftable [sic] problem."

The motion to vacate was denied.

On December 9, Kosten filed a motion for rehearing. The court ruled that the motion was "inappropriate" and denied it. Kosten then appealed both the grant of summary judgment and the refusal to vacate the judgment.

## I

■ The first issue is whether the trial court erred in granting the defendants' motion for summary judgment. The standard for summary judgment is well settled: "A defendant may, at any time, move with or without supporting affidavits for a summary judgment in his or her favor as to all or any part of the relief sought against him or her." (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(b).) Furthermore, a judgment can be rendered "without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(c).) In determining whether a genuine issue of fact exists, the court must strictly construe the evidence against the movant. *Johnson v. St. Bernard Hospital* (1979), 79 Ill. App. 3d 709, 714, 399 N.E.2d 198, *appeal denied* (1980), 79 Ill. 2d 631.

■ It is also established in this jurisdiction that summary judgment is appropriate in a medical malpractice case when there is no genuine issue of material fact. (*Bennett v. Raag* (1982), 103 Ill. App. 3d 321, 326, 431 N.E.2d 48, *appeal denied* (1982), 91 Ill. 2d 557.) Our supreme court has stated that a plaintiff "must establish the standards of care against which the defendant doctor's conduct is measured. The plaintiff must then further prove by affirmative evidence that, judged in light of these standards, the doctor was unskillful or negligent and that his want of skill or care caused the injury to the plaintiff." *Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 423, 328 N.E.2d 301.

■ What is disputed in this case is the defendants' standard of care. The plaintiff, through the affidavit of Dr. Morgan, claimed that the defendants breached their duty to the decedent by deviating from the usual standard of care.

The trial court struck the plaintiff's affidavit because it failed to comply with the requirements of Supreme Court Rule 191, which states in part:

> "(a) **Requirements.** Affidavits in support of and in opposition to a motion for summary judgment under section 2—1005 of the Code of Civil Procedure *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; *** shall not consist of conclusions but of facts admissible in evidence; ***." (87 Ill. 2d R. 191.)

Clearly, under the language of the statute, the trial court correctly struck the plaintiff's affidavit as being legally insufficient for the following reasons.

Dr. Morgan's affidavit stated that the defendants had departed from an acceptable standard of care by "failing to attend and properly treat the decedent" and by "failing to fully utilize appropriate diagnostic measures." On their face, these statements are conclusions that are unsupported by specific facts. The plaintiff thus "ignores the rule of law that conclusions of fact unsupported by allegations of specific facts from which such conclusions may be drawn will not avail to present a genuine issue of material fact sufficient to take the case to the trier of fact." (*Steinmetz v. Board of Trustees* (1978), 68 Ill. App. 3d 83, 88, 385 N.E.2d 745, *appeal denied* (1979), 75 Ill. 2d 594.) In this case, the affidavit had no facts to substantiate its conclusions, and affidavits not supported by allegations of fact are not sufficient to defeat a motion for summary judgment. *Cantu v. Utility Dynamics Corp.* (1979), 70 Ill. App. 3d 260, 265, 387 N.E.2d 990.

■ Even if we accept the plaintiff's contention that the affidavit should have been allowed, the result is the same, because there is nothing in the affidavit to counter Dr. Rosen's opinion that the decedent would have died regardless of any change in treatment. Where such averments of fact are not contradicted, they are taken as true. (*Ware v. Carey* (1979), 75 Ill. App. 3d 906, 923, 394 N.E.2d 690.) Dr. Morgan's affidavit does not state facts prescribing an alternative course of treatment that could have saved Victor Kosten.

■ Plaintiff contends that the trial court erred in its analysis of Dr. Morgan's affidavits by failing to apply the rules of *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, *cert. denied* (1981), 454

U.S. 836, 70 L. Ed. 2d 117, 102 S. Ct. 140. In *Wilson,* our supreme court held that an expert may give opinion testimony *at trial* without disclosing facts underlying such opinion. The burden is placed upon the adverse party during cross-examination to elicit facts underlying the expert opinion. (84 Ill. 2d 186, 194.) Therefore, plaintiff argues that an expert's affidavit need not state any facts but may set forth only conclusions.

*Wilson* has no relevance to summary judgment procedure. An affidavit utilized in summary judgment procedure is totally different from testimony at trial. The affidavit cannot be cross-examined as can a witness at trial.

Supreme Court Rule 191 is specific in mandating that affidavits cannot consist of conclusions but must set forth facts admitted in evidence. (87 Ill. 2d R. 191.) *Wilson* did not overrule or modify Rule 191.

Dr. Morgan's affidavits did not meet the requirements of Rule 191 and were properly stricken.

## II

■ Plaintiff also argues that the trial court abused its discretion by denying her motion to vacate the judgment. Generally, the court's decision will be affirmed unless the movant shows an abuse of discretion. (*Chandler v. Jet Air Freight, Inc.* (1977), 54 Ill. App. 3d 1005, 370 N.E.2d 95.) The test is whether the refusal to vacate the judgment violates a plaintiff's right to fundamental justice and manifests an improper application of discretion. (54 Ill. App. 3d 1005, 1007.) The movant carries the burden of establishing sufficient grounds to vacate the order. *In re Marriage of Melton* (1981), 93 Ill. App. 3d 338, 343, 417 N.E.2d 220.

At the hearing on the motion to vacate, the trial court specifically asked the plaintiff whether the revised affidavit contained anything new. Plaintiff answered, "I don't think there is anything in the second affidavit that was not also known in the first affidavit ***." Thus, plaintiff herself concedes that there was no new evidence to consider, so it is evident that there was no abuse of discretion in not vacating the judgment. A motion to vacate is properly denied when the evidence was in the movant's possession and could have been presented prior to judgment. *Rahill Corp. v. Urbanski* (1984), 123 Ill. App. 3d 769, 777, 463 N.E.2d 765.

The revised, four-paragraph affidavit, moreover, was all that plaintiff produced in the time between the defendants' motion for summary judgment and the court's granting of the motion almost a year later. In that time, the court gave the plaintiff ample opportunity

to present her case. The result, as we have noted, was an affidavit that was conclusory and that did not create any triable issues of fact. A mere assertion by a plaintiff "that there exists a genuine issue of material fact does not create such an issue." *Loizzo v. St. Francis Hospital* (1984), 121 Ill. App. 3d 172, 180, 459 N.E.2d 314, *appeal denied* (1984), 99 Ill. 2d 529.

■ Finally, the plaintiff argues that the court abused its discretion when it refused to allow her motion for rehearing, filed December 14, 1983. The argument is without merit, for her motion was clearly improper under the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1203), which provides that a post-judgment motion in a nonjury case be brought within 30 days. Because the judgment here was rendered on July 15, the plaintiff's motion of December 14 was untimely and merely duplicated her earlier motion to vacate the judgment.

For the foregoing reasons, the judgment of the circuit court of Cook County is hereby affirmed.

Affirmed.

STAMOS, P.J., and HARTMAN, J., concur.