(No. 91072

SHIRLEY ROBIDOUX, Indiv. and as Ex'r of the Estate of Harvey Robidoux, Deceased, Appellee, v. URETZ J. OLIPHANT, M.D., *et al.* (Uretz J. Oliphant, M.D., *et al.*, Appellants).

*Opinion filed June 20, 2002.—Rehearing denied August 29, 2002.*

326

Karen L. Kendall, of Peoria, and Edward M. Wagner,

of Urbana, both of Heyl, Royster, Voelker & Allen, for appellants.

Michael D. Marrs, Jeffrey M. Goldberg and Mark A. Brown, of Jeffrey M. Goldberg & Associates, Ltd., and Bruce R. Pfaff, all of Chicago, for appellee.

JUSTICE McMORROW delivered the opinion of the court:

This appeal stems from the death of Harvey Robidoux, who was injured in a motorcycle accident on July 15, 1995, and was subsequently taken to the Carle Foundation Hospital (the Hospital) in Urbana. While there, he was treated by, *inter alia*, defendant Uretz J. Oliphant, M.D., an employee of defendant Carle Clinic Association (the Clinic). Harvey Robidoux died at the Hospital the same day. In June 1997, plaintiff Shirley Robidoux, Harvey's widow, sued Oliphant and the Clinic, along with several others who are not parties to this appeal, in the circuit court of Champaign County. In 1999, following defendants' motions for summary judgment, plaintiff filed a response to which she attached the affidavit of David Richards, M.D., plaintiff's expert witness. On October 4, 1999, Oliphant filed a supplemental reply to plaintiff's response and a motion to strike Richards' affidavit. The next day, October 5, the trial court granted Oliphant's motion to strike, as well as his "unrefuted" motion for summary judgment. The trial court subsequently granted the Clinic's motion for summary judgment. Plaintiff appealed, and the appellate court reversed. No. 4—00—0105 (unpublished order under Supreme Court Rule 23). We allowed defendants' petition for leave to appeal. 177 Ill. 2d R. 315. For the reasons set forth below, we reverse the judgment of the appellate court.

## BACKGROUND

The following facts are taken from the pleadings and

other materials of record, including Richards' affidavit and Oliphant's deposition. On July 15, 1995, plaintiff's decedent, Harvey Robidoux (decedent), was injured in a motorcycle accident and was taken to the Hospital. He arrived at the emergency room shortly after 12 p.m. Oliphant, the head of the Hospital's trauma division, was not in the emergency room when decedent arrived, and took no part in his initial care and treatment. At 12:32 p.m., it was ordered that decedent undergo a computed tomography (CT) scan. During this scan, decedent went into cardiac arrest. Oliphant, who arrived at the emergency room about this time, ordered the CT scan halted, and decedent was taken to the operating room.

Oliphant, who is a board-certified general surgeon, began operating on decedent at about 1:15 p.m. He testified in his deposition that he found a large, ruptured hematoma, or blood clot, extending from decedent's pelvis upward and spreading over half his abdomen. Oliphant determined that decedent's iliac vein[1] was completely severed, and he believed that all of decedent's iliac vessels on one side were torn. Decedent died a short time later. According to Oliphant, the cause of death was intra-abdominal bleeding from the severed or injured iliac vessels.

In his deposition, Oliphant was asked if alternative measures, including starting surgery earlier, might have saved decedent's life. Oliphant answered that because of the severity of decedent's injuries, he did not believe it would have made any difference. Oliphant also stated

---

[1]The term "iliac vein" is defined as "any of three veins on each side of the body corresponding to and accompanying the iliac arteries," which are themselves defined as "either of the large arteries supplying blood to the lower trunk and hind limbs." Webster's Third New International Dictionary 1125 (1993). The term "iliac" is derived from "ilium," which is a bone in the pelvis. Webster's Third New International Dictionary 1126 (1993).

that his treatment of decedent on July 15, 1995, was within the appropriate standard of care.

In counts I through III of her fourth amended complaint, plaintiff alleged that Oliphant was negligent in failing timely to (1) institute appropriate fluid resuscitation therapy, (2) diagnose internal bleeding, (3) treat internal bleeding, and (4) diagnose an unstable pelvic fracture. In counts X through XII plaintiff sought to hold the Clinic, Oliphant's employer, vicariously liable for Oliphant's actions.

Oliphant and the Clinic filed motions for summary judgment. In Oliphant's motion, to which he attached excerpts from his deposition, Oliphant asserted that he was not involved in the initial treatment of decedent and there was no negligence in his subsequent treatment of decedent. Plaintiff's response was filed seven days after the initial deadline set by the trial court, but within an extended deadline that was set by the court *sua sponte*.[2] Plaintiff asserted in her response that there were genuine issues of material fact as to whether Oliphant acted within the standard of care. Attached to plaintiff's response was Dr. Richards' signed affidavit, which stated in full:

"The undersigned, being first duly sworn under oath, deposes and states as follows:

1. I am a physician licensed to practice medicine in the State of Ohio and a board certified general surgeon;

2. I have been treating trauma patients with injuries similar to those of Harvey Robidoux and have practiced in the same area of health care medicine that is at issue in this case in excess of six years;

3. I have reviewed the records of Ford-Baier Ambulance Service and Carle Foundation Hospital, as well as various

---

[2]Plaintiff was initially given until September 22, 1999, to respond to the motions for summary judgment. On September 27, the trial court extended the deadline to September 29, which is the date the response was filed.

depositions, including the deposition of Urtez [*sic*] J. Oliphant, M.D.;

4. That in my opinion, based upon a reasonable degree of medical certainty, the care and treatment provided by Dr. Oliphant to Harvey Robidoux at Carle Foundation Hospital on July 15, 1995, fell below the standard of care. In my opinion, Dr. Oliphant failed to recognize in a timely fashion that the patient had a[n] unstable pelvic fracture that was the most probable source of the bleeding, failed to take appropriate measures to provide adequate fluid resuscitation therapy and failed to take appropriate measures to immobilize and repair the damages [*sic*] blood vessels;

5. In my opinion, based upon a reasonable degree of medical certainty, had the patient received appropriate fluid resuscitation in a timely manner, and appropriate treatment to immobilize and repair the damage to blood vessels in the pelvic region, it is more probably true than not that the patient would have survived.

6. This affidavit is based on my education, training and experience, as well as my review of the various materials referenced herein and that, if sworn as a witness, I can and will testify competently to the facts and opinions stated herein, to a reasonable degree of medical certainty."

Oliphant filed a supplemental reply to plaintiff's response and a motion to strike Richards' affidavit. In his motion, Oliphant alleged that Richards' affidavit was improper and in violation of Supreme Court Rule 191 (145 Ill. 2d R. 191). Oliphant asserted that the affidavit was undated and unverified, and therefore did not contravene Oliphant's summary judgment motion, which was supported by his sworn deposition testimony. According to Oliphant, there was no indication in Richards' affidavit "of verification or swearing under oath by any proper official or notary public." Oliphant added that Richards' affidavit consisted of "vague conclusions" and contained no admissible facts, and thus did not comply with Supreme Court Rule 191, which requires that such affidavits set forth with particularity "the facts" upon

which the affiant relied. 145 Ill. 2d R. 191. In addition, Oliphant pointed to a Rule 191 requirement that sworn or certified copies of all papers upon which the affiant relies must be attached to the affidavit. No such papers were attached to Richards' affidavit.

The trial court granted Oliphant's motion to strike, explaining that Richards' affidavit "is not verified and does not comport with the requisites of Supreme Court Rule 191." The court then granted Oliphant's motion for summary judgment, which the court held "stands unrefuted in effect." Plaintiff filed a motion to reconsider, to which she attached Richards' supplemental affidavit. Oliphant filed a response to plaintiff's motion to reconsider and a motion to strike Richards' supplemental affidavit.

Because the original judge who granted Oliphant's motion for summary judgment had since retired, a different judge presided over a joint hearing on plaintiff's motion to reconsider, Oliphant's motion to strike Richards' supplemental affidavit, and the Clinic's motion for summary judgment. Despite finding that Richards' supplemental affidavit was "adequate to create a genuine issue of material fact," the trial court nevertheless granted Oliphant's motion to strike, "not because [the affidavit] is defective under Rule 191, but because it is not timely." The court therefore denied plaintiff's motion to reconsider and held that the summary judgment in favor of Oliphant remained "in full force and effect." The court also granted the Clinic's motion for summary judgment. Finally, the court found, pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)) that, as to all of these rulings, there was no just reason to delay enforcement or appeal.

Plaintiff appealed, and the appellate court reversed and remanded. No. 4—00—0105 (unpublished order under Supreme Court Rule 23). The appellate court first

held that the striking of an affidavit for noncompliance with Rule 191 should be reviewed *de novo* and not under the "abuse of discretion" standard. The court then found that, while Richards' original affidavit might have violated Rule 191 in a technical sense, it was nevertheless substantively in compliance and should not have been stricken. This affidavit, the appellate court further held, presented a genuine issue of material fact as to whether Oliphant's treatment of decedent fell below the standard of care. Accordingly, the appellate court determined that the trial court improperly granted summary judgment in favor of Oliphant and the Clinic. We allowed defendants' petition for leave to appeal. 177 Ill. 2d R. 315.

## ANALYSIS

The question before us is one of statutory construction. We are asked to determine the precise scope of the requirements set forth in Rule 191(a). It is well settled that the construction of our rules is comparable to this court's construction of statutes. The committee comments to Supreme Court Rule 2 state that "the same principles that govern the construction of statutes are applicable to the rules." 134 Ill. 2d R. 2, Committee Comments; *cf. Bright v. Dicke*, 166 Ill. 2d 204, 210 (1995) (supreme court rules are neither aspirational nor are they suggestions; "[t]hey have the force of law, and the presumption must be that they will be obeyed and enforced as written"). As is the case with statutes, our primary task in construing a rule is to ascertain and give effect to the intent of its drafters. *In re Estate of Rennick*, 181 Ill. 2d 395, 404-05 (1998). "The most reliable indicator of intent is the language used, which should be given its plain and ordinary meaning." *Rennick*, 181 Ill. 2d at 405. The construction of a statute is a question of law and is reviewed *de novo*. *In re Estate of Dierkes*, 191 Ill. 2d 326, 330 (2000). We therefore review the interpretation of Rule 191(a) *de novo*.

Rule 191(a) states in pertinent part:

"Affidavits in support of and in opposition to a motion for summary judgment under section 2—1005 of the Code of Civil Procedure *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all papers upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." 145 Ill. 2d R. 191(a).

Plaintiff directs our attention to this court's decision in *Wilson v. Clark*, 84 Ill. 2d 186 (1981), and argues that, in light of this decision, the requirements of Rule 191(a) cannot be given literal effect. We disagree.

In *Wilson*, this court adopted Rules 703 and 705 of the Federal Rules of Evidence pertaining to an expert's testimony at trial. Rule 703 states in pertinent part:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted." Fed. R. Evid. 703.

The court in *Wilson* noted that, in a trial context, "[b]oth Federal and State courts have interpreted Federal Rule 703 to allow opinions based on facts not in evidence." *Wilson*, 84 Ill. 2d at 193.

Rule 705 states:

"The expert may testify in terms of opinion or inference and give reasons therefor without first testifying to the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination." Fed. R. Evid. 705.

In accordance with Rule 705, we held in *Wilson* that, at trial, "an expert may give an opinion without disclos-

ing the facts underlying that opinion." *Wilson*, 84 Ill. 2d at 194. "Under Rule 705 the burden is placed upon the adverse party during cross-examination to elicit the facts underlying the expert opinion." *Wilson*, 84 Ill. 2d at 194. We explained in *Wilson* that our "following of Federal Rules 703 and 705 comports with the modern trend liberalizing certain trial procedures." *Wilson*, 84 Ill. 2d at 195. Thus, under *Wilson*, an expert testifying at trial may offer an opinion based on facts not in evidence, and the expert is not required on direct examination to disclose the facts underlying the expert's opinion.

Plaintiff at bar argues in essence that there is an inconsistency between *Wilson* and the plain language of Rule 191(a). As noted, under *Wilson*, an expert's opinions may be offered at trial in the form of conclusions. However, under the plain language of Rule 191(a), an expert's affidavit in support of or in opposition to a motion for summary judgment must consist not of conclusions but of facts admissible in evidence, and it must set forth these facts with particularity. Plaintiff thus appears to contend that we should construe Rule 191(a) not according to its plain language, but rather in conformity with the more relaxed standard established in *Wilson*.

The difficulty with plaintiff's contention is that *Wilson* deals with an expert's testimony *at trial*, while Rule 191(a) deals with affidavits in support of or in opposition to motions for summary judgment. As was explained by our appellate court in *Kosten v. St. Anne's Hospital*, 132 Ill. App. 3d 1073 (1985), these two procedural settings are very different. In *Kosten*, the plaintiff raised the same argument as does plaintiff at bar, contending that, in light of this court's decision in *Wilson*, her expert's affidavit "need not state any facts but may set forth only conclusions." *Kosten*, 132 Ill. App. 3d at 1080. In rejecting this argument, our appellate court explained:

> "*Wilson* has no relevance to summary judgment procedure. An affidavit utilized in summary judgment procedure

is totally different from testimony at trial. The affidavit cannot be cross-examined as can a witness at trial.

Supreme Court Rule 191 is specific in mandating that affidavits cannot consist of conclusions but must set forth facts admitted in evidence. [Citation.] *Wilson* did not overrule or modify Rule 191." *Kosten*, 132 Ill. App. 3d at 1080. Accord *Landeros v. Equity Property & Development*, 321 Ill. App. 3d 57, 63 (2001); *Woolums v. Huss*, 323 Ill. App. 3d 628, 636 (2001); *Northrop v. Lopatka*, 242 Ill. App. 3d 1, 8 (1993).[3]

We agree with the reasoning of the court in *Kosten*. Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1998); *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 517-18 (1993). The purpose of summary judgment is not to try a question of fact, but to determine if one exists. *Gilbert*, 156 Ill. 2d at 517. Although a plaintiff is not required to prove his case at the summary judgment stage, in order to survive a motion for summary judgment, the nonmoving party must present a factual basis that would arguably entitle the party to a judgment. *Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority*, 172 Ill. 2d 243, 256 (1996). An affidavit submitted in the summary judgment context serves as a substitute for testimony at trial. *Fooden v. Board of Governors of State Colleges & Universities*, 48

---

[3]This court has not directly addressed the issue of Rule 191 as it relates to *Wilson*. However, in *Majca v. Beekil*, 183 Ill. 2d 407, 423-24 (1998), we affirmed the striking of an expert's affidavit on the ground that it was conclusory rather than fact based and thus did not meet the requirements of Rule 191. See also *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 462-63 (1996) (upholding the striking of an expert's affidavit for failure to comply with Rule 191, where affidavit was challenged as being "merely conjectural").

Ill. 2d 580, 587 (1971). Therefore, it is necessary that there be strict compliance with Rule 191(a) "to insure that trial judges are presented with valid evidentiary facts upon which to base a decision." *Solon v. Godbole*, 163 Ill. App. 3d 845, 851 (1987).

Further support for the position taken by the court in *Kosten* can be found in the federal court of appeals decision in *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88 (1st Cir. 1993), which addressed an issue similar to the Rule 191-*Wilson* question. In *Hayes*, the court considered the interplay between Rule 705 of the Federal Rules of Evidence (one of the rules adopted in *Wilson*) and Rule 56(e) of the Federal Rules of Civil Procedure. Rule 56(e), a subsection of the federal rule governing motions for summary judgment in federal court, is similar to our Rule 191(a). Rule 56(e) states in pertinent part:

> "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." Fed. R. Civ. P. 56(e).

The plaintiffs in *Hayes* raised essentially the same argument as did the plaintiff in *Kosten* and plaintiff in the case at bar, *i.e.*, that under Federal Rule of Evidence 705, the conclusory assertions made in their experts' affidavits were sufficient to withstand a motion for summary judgment. The court in *Hayes* disagreed, and affirmed the trial court's granting of summary judgment. According to the *Hayes* court, such affidavits submitted in opposition to a motion for summary judgment must meet the standards of Rule 56(e), which "requires that the nonmoving party 'set forth specific facts showing that there is a genuine issue for trial.'" *Hayes*, 8 F.3d at 92, quoting Fed. R. Civ. P. 56(e). The court added that the plaintiffs' reliance upon Rule 705 was "largely inap-

posite" because that rule "was designed to apply in the context of a trial, where cross-examination provides an opportunity to probe the expert's underlying facts and data and to test the conclusions reached by the expert." *Hayes*, 8 F.3d at 92.

The court in *Hayes* further stated:

> "The evidentiary rules regarding expert testimony at trial were 'not intended *** to make summary judgment impossible whenever a party has produced an expert to support its position.' [Citation.] We are not willing to allow the reliance on a bare ultimate expert conclusion to become a free pass to trial every time that a conflict of fact is based on expert testimony. As with all other evidence submitted on a motion for summary judgment, expert affidavits must be reviewed in light of [Rule] 56." *Hayes*, 8 F.3d at 92.

See also *Merit Motors, Inc. v. Chrysler Corp.*, 569 F.2d 666, 673 (D.C. Cir. 1977) ("To hold that Rule 703 prevents a court from granting summary judgment against a party who relies solely on an expert's opinion that has no more basis *** than *** theoretical speculations would seriously undermine the policies of Rule 56. We are unwilling to impose the fruitless expenses of litigation that would result from such a limitation on the power of a court to grant summary judgment"); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) (concluding that Rules 703 and 705 "do not alter the requirement of [Rule] 56(e) that an affidavit must set forth specific facts in order to have any probative value").

In light of these authorities, we conclude that Rule 191(a) should be construed according to the plain and ordinary meaning of its language. Its requirements should be adhered to as written. See *Bright v. Dicke*, 166 Ill. 2d 204, 210 (1995). If we were to lessen these requirements and interpret Rule 191(a) in conformity with the more relaxed standard established in *Wilson*, we would be making "summary judgment impossible whenever a party has produced an expert to support its position."

*Merit Motors*, 569 F.2d at 673. We decline to construe Rule 191(a) in this manner.

Notwithstanding the foregoing, plaintiff points to the special concurrence in *Woolums v. Huss*, 323 Ill. App. 3d 628 (2001), which asserts an essential equivalence between expert opinion testimony at trial and an expert's affidavit in a summary judgment context. The special concurrence argues that, given this court's decision in *Wilson*, "the admission of an expert opinion under Rule 191 at the summary judgment stage requires a greater showing of foundation than is required for admission of the same expert opinion at trial." *Woolums*, 323 Ill. App. 3d at 642 (Steigmann, P.J., specially concurring). According to the special concurrence, this is an inconsistency for which there is no sound basis.

We find this argument unconvincing. As noted, Federal Rules 703 and 705 were designed to apply to an expert's testimony *at trial*. Rule 191, on the other hand, was drafted to apply to pretrial proceedings, including summary judgment. For purposes of our analysis, there is no equivalence between these two procedural contexts. Accordingly, there is no inconsistency in having one standard for admission of an expert's testimony at trial and a different, more stringent standard for admission of an expert's affidavit in support of or in opposition to a motion for summary judgment. As noted, such an affidavit serves as "a substitute for testimony taken in open court." *Fooden v. Board of Governors of State Colleges & Universities*, 48 Ill. 2d 580, 587 (1971). Given that cross-examination is unavailable as a means to test an affidavit, it is not surprising that the standard for admission of an affidavit in a summary judgment context would be higher than for the admission of an expert's opinion at trial. *Cf. Solon v. Godbole*, 163 Ill. App. 3d 845, 851 (1987) ("strict compliance with Supreme Court Rule 191(a) is necessary to insure that trial judges are

presented with valid evidentiary facts upon which to base a decision").

For the reasons set forth above we conclude that *Wilson* is inapplicable to a summary judgment situation. Therefore, an expert's affidavit in support of or in opposition to a motion for summary judgment must adhere to the requirements set forth in the plain language of Rule 191(a).

Plaintiff next argues that even if *Wilson* does not apply, and Rule 191(a) therefore is construed according to its plain meaning, the rule's provision requiring that supporting documents be attached to the affidavit need not be strictly followed. According to plaintiff, the failure to attach such papers to the affidavit is merely a technical violation of the rule and should be disregarded if the affiant is competent to testify at trial. We disagree.

We have already held that Rule 191(a)'s requirements are to be construed according to the plain language of the rule. Here, the plain language clearly requires that such papers be attached to the affidavit. Moreover, supreme court rules, like statutes, should be construed as a whole, with individual provisions interpreted in light of other relevant provisions. See *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504 (2000). The Rule 191(a) provisions barring conclusionary assertions and requiring an affidavit to state facts with "particularity" would have little meaning were we to construe the attached-papers provision as merely a technical requirement that could be disregarded so long as the affiant were competent to testify at trial.

In support of her position, plaintiff relies upon *Beals v. Huffman*, 146 Ill. App. 3d 30 (1986), which held that the failure to attach to an affidavit the papers on which an affiant relies is a technical violation of Rule 191(a). According to the court in *Beals*, such technical interpretations are not favored, and technical insufficiencies such

as the failure to attach documents should be disregarded if it appears that the affiant would be a competent witness at trial. *Beals*, 146 Ill. App. 3d at 39. For the reasons set forth above, we decline to construe the attached-papers provision in this manner. As we stated in *Bright v. Dicke*, 166 Ill. 2d 204, 210 (1995), the rules of this court neither are aspirational nor are they mere suggestions; "[t]hey have the force of law, and the presumption must be that they will be obeyed and enforced as written."

Plaintiff next urges that an affidavit need not be notarized in order to comply with the requirements of Rule 191(a). We agree.

We note initially that there is no express requirement in Rule 191(a) that an affidavit be notarized. As was noted in *Northrop v. Lopatka*, 242 Ill. App. 3d 1, 7 (1993), "Supreme Court Rule 191 does not expressly require that affidavits include evidence of the administration of an oath to the affiant." What is required is that the "affidavit must be signed by the deponent or his name must appear therein as the person who took the oath." *Northrop*, 242 Ill. App. 3d at 7.

The signed affidavit at issue in *Northrop* recited that the affiant, " 'after being duly sworn upon [his] oath[,] depose[s] and state[s] as follows.' " *Northrop*, 242 Ill. App. 3d at 7. The court in *Northrop* held that this affidavit was "minimally sufficient, as the deponent's name appears as one having taken an oath." *Northrop*, 242 Ill. App. 3d at 7. In the instant case, Richards' affidavit, which was also signed, presents a similar recitation, stating that "[t]he undersigned, being first duly sworn under oath, deposes and states as follows." The appellate court below relied upon *Northrop* in concluding that Richards' affidavit did not violate Rule 191(a), even though the affidavit lacked notarization. We agree with this interpretation of the rule.

Notwithstanding the foregoing, defendants argue that in order to comply with Rule 191(a), an affidavit must appear to have been sworn to before an officer of the court. In support, defendants point to decisions by our appellate court in *People v. Smith*, 22 Ill. App. 3d 377 (1974), and *Hough v. Weber*, 202 Ill. App. 3d 674 (1990). Defendants' reliance upon these decisions is misplaced.

*Smith* contains an assertion that an affidavit must appear to have been sworn to before an officer. The court in *Hough* cites to *Smith* in making essentially the same assertion. However, neither of these decisions involves Rule 191(a), which by its terms applies to "[a]ffidavits in support of and in opposition to a motion for summary judgment under section 2—1005 of the Code of Civil Procedure, affidavits submitted in connection with a motion for involuntary dismissal under section 2—619 of the Code of Civil Procedure, and affidavits submitted in connection with a special appearance to contest jurisdiction over the person, as provided by section 2—301(b) of the Code of Civil Procedure."[4] 145 Ill. 2d R. 191(a).

In *Smith*, the "affidavit" in question stated, allegedly

---

[4]Defendants also point to *Hamer Holding Group, Inc. v. Elmore*, 244 Ill. App. 3d 1069 (1993), which on its surface appears to implicate Rule 191(a). There, the court held that the affidavits in question "lacked *** the seal of a notary and as such do not comport with Supreme Court Rule 191(a)." *Hamer*, 244 Ill. App. 3d at 1084. However, this holding was clearly judicial *dictum*, *i.e.*, not essential to the decision. See Black's Law Dictionary 465 (7th ed. 1999). In addition, it is questionable whether these affidavits were of a type that is included within the scope of Rule 191(a). *Hamer* dealt with the enforceability of a covenant not to compete, and the affidavits in question were attached to the defendant's petition seeking to bar enforcement of the covenant on the ground of a change in circumstances. They were not filed in support of or in opposition to a summary judgment motion, nor do they appear to have been filed in connection with a special appearance to contest jurisdiction over the person or in connection with a section 2—619 motion to dismiss.

falsely, that the person named in an accompanying ballot application was "physically incapable of being present at the polls on election day." *Smith*, 22 Ill. App. 3d at 378. This affidavit was the centerpiece of an indictment charging the defendants, including the physician who signed the affidavit, with conspiracy to commit perjury. The affidavit did not fall within the scope of Rule 191(a). It was not filed in support of or in opposition to a summary judgment motion, nor was it submitted in connection with a special appearance to contest jurisdiction over the person or in connection with a section 2—619 motion to dismiss. The same is true of *Hough*, which dealt with a dispute between a widow and her husband's adult children over the disinterment of the husband's remains. The widow sued to prevent the disinterment, and the trial court issued a preliminary injunction in her favor. The defendants subsequently filed a motion for rehearing and a motion to preserve the evidence, both of which were denied. The affidavit in question was submitted in support of the motion to preserve evidence. As was the case in *Smith*, this affidavit was not within the scope of Rule 191(a). These decisions provide no support for defendants' argument that Rule 191(a) requires an affidavit to be notarized.

Defendants also attempt to distinguish *Northrop v. Lopatka*, 242 Ill. App. 3d 1 (1993), where, as noted, an affidavit was found to be "minimally sufficient" under Rule 191 even though the affidavit was not notarized. Defendants note that the affiant in *Northrop*, unlike Richards in the instant case, "had already given sworn deposition testimony, but had thereafter filed a defective affidavit." The appellate court below rejected this same argument, correctly concluding that "[t]he fact that Richards had not yet been deposed is irrelevant." As the appellate court noted, "[t]he court [in *Northrop*] actually found the affidavit sufficient because the affiant had taken an

oath, not because he had been deposed." This conclusion by the appellate court below is supported by the language used by the court in *Northrop*, which stated: "We nevertheless conclude that the affidavit here was minimally sufficient, as the deponent's name appears as one having taken an oath." *Northrop*, 242 Ill. App. 3d at 7.

We now apply our construction of Rule 191(a) to Richards' original affidavit, which, as previously indicated, was stricken by the trial court. We note initially that, contrary to the trial court's assertion that the affidavit was "not verified," we find that it showed sufficient signs of verification to meet the requirements of Rule 191(a). As discussed previously, an affidavit need not be notarized in order to comply with Rule 191(a). Instead, it must be signed by the affiant, or "his name must appear therein as the person who took the oath." *Northrop v. Lopatka*, 242 Ill. App. 3d 1, 7 (1993). Here, Richards' affidavit was signed, and his name appeared as one having taken an oath. Lack of notarization did not render this affidavit insufficient.

As to the requirement that facts be set forth with particularity and that the affidavit consist not of conclusions but of facts admissible in evidence, Richards' initial affidavit does appear to be somewhat conclusionary. However, we are not convinced that the affidavit is as devoid of factual support as defendants maintain. In his affidavit Richards mentions, for example, decedent's "unstable pelvic fracture," which, according to Richards, Oliphant failed to recognize in a timely fashion as the most probable source of bleeding. Richards also points to "damage to blood vessels in the pelvic region," opining that there should have been "appropriate treatment to immobilize and repair" such damage.

Nevertheless, it is undisputed that the affidavit did not have attached "sworn or certified copies of all papers upon which the affiant relie[d]." 145 Ill. 2d R. 191(a). As

noted, this requirement is inextricably linked to the provisions requiring specific factual support in the affidavit itself. It is not a mere technical requirement. Were we to relax this attached-papers requirement and construe it in conformity with the more lenient standard established in *Wilson*, we would be lowering the bar and allowing the avoidance of summary judgment whenever a party is able to produce an expert to support its position. See *Merit Motors, Inc. v. Chrysler Corp.*, 569 F.2d 666, 673 (D.C. Cir. 1977). We are unwilling to allow the simple production of an expert's conclusion "to become a free pass to trial" in such a context. *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 92 (1st Cir. 1993).

Notwithstanding the foregoing, plaintiff asserts that the trial court's decisions to strike Richards' initial affidavit and grant the motion for summary judgment were taken without a hearing. Plaintiff therefore argues that she "was deprived of any opportunity to correct deficiencies in the original affidavit before it was stricken or, most importantly, to submit a supplemental affidavit prior to the trial court['s] ruling on the motion for summary judgment."

Plaintiff did not raise this issue in her motion to reconsider, nor was it raised during the hearing on this motion. "Questions not raised in the trial court cannot be argued for the first time on appeal." *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 355 (1998). Plaintiff therefore has waived this issue. In addition, under the local circuit court rules, "[t]he allowance of oral arguments upon motions [is] discretionary with the court," which may "decide a motion without hearing oral arguments." 6th Judicial Cir. Ct. R. 2.1(c) (eff. February 6, 1997). According to these rules, it was within the court's discretion to grant the motion to strike the affidavit and the motion for summary judgment without conducting a hearing.

For the reasons set forth above, we conclude that, under any standard of review, Richards' initial affidavit clearly did not meet the plain-language requirements of Rule 191(a). It was therefore not error for the trial court to strike this affidavit and grant summary judgment in favor of defendants.

Plaintiff next argues that the trial court erred in striking Richards' supplemental affidavit and denying plaintiff's motion for reconsideration. We disagree.

We note initially that while the supplemental affidavit states that "copies of the records and depositions that [Richards] reviewed and relied upon in support of [his] opinions are attached hereto as Group Exhibit B," we could find no such Group Exhibit B attached to the supplemental affidavit in the record. This exhibit is referred to during the hearing on plaintiff's motion to reconsider, but its absence from the record on appeal leaves us to speculate as to whether the appropriate documents were attached to the affidavit, as required by Rule 191(a).

Plaintiff correctly notes that the judge at the hearing on the motion to reconsider held that the supplemental affidavit was adequate under Rule 191(a). The judge stated that "this time in the supplemental affidavit Dr. Richards incorporates *** certain specific facts upon which he's relying in arriving at his opinion," and the judge concluded that this affidavit "would be adequate to create a genuine issue of material fact." However, the judge struck the affidavit "not because it is defective under Rule 191, but because it is not timely." The judge stated that "[t]here is simply no explanation, much less a good one tendered, as to why the supplemental affidavit *** was not submitted" prior to the trial court's decision on the motion for summary judgment.

In reaching this conclusion, the trial judge cited *Gardner v. Navistar International Transportation Corp.*, 213 Ill. App. 3d 242 (1991), where the court stated:

"Trial courts should not permit litigants to stand mute, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling. Civil proceedings already suffer from far too many delays, and the interests of finality and efficiency *require* that the trial courts not consider such late-tendered evidentiary material, no matter what the contents thereof may be." (Emphasis in original.) *Gardner*, 213 Ill. App. 3d at 248-49.

The judge also noted that "there has been a chronic pattern [of tardiness] throughout this case which has truly infected these proceedings." He then provided a chronology of plaintiff's tardinesses in the case:

"Two Motions for Judgment were filed by the defense because the Plaintiff had not filed amended pleadings in compliance with the time frames set by [the trial court]. The first Motion for Judgment was filed March 22nd, 1999, and [the trial court] granted the Plaintiff an extension of time to respond and granted that extension \*\*\* to April 13th of 1999. Again, the Plaintiff did not file in a timely fashion, so a second Motion for Judgment was filed April the 15th of 1999. Notwithstanding that, [the trial court] granted leave to file a Third Amended Complaint on May the 11th of 1999. On June 17th of 1999 another Motion for Extension of Time was allowed the Plaintiff [by the trial court], this time to respond to a Motion to Strike and Dismiss. Notwithstanding the extension of time, the response for the Motion to Strike and Dismiss was filed eight days late. On July 21st of 1999, nevertheless[,] the Plaintiff was given leave to amend the complaint again. \*\*\* On September 13th of 1999 the Plaintiff's Motion for Leave to File a Fourth Amended Complaint, quote 'belatedly,' closed quotes, was granted by [the trial court] over the objection of the Defendant, and the Plaintiff was given to September 22nd of 1999 to file a response to the Motions for Summary Judgment that I am being asked to reconsider today. On [September] 27th of 1999, [the trial court], again, apparently *ex parte*, afforded the Plaintiff an opportunity to respond to September the 29th of 1999, and it was not until October 5th of 1999 that Summary Judgment was granted."

The judge concluded that "the sound exercise of the

Court's discretion dictates granting the Motion to Strike the Supplemental Affidavit simply on the basis of timeliness or lack thereof."

A ruling on a motion to reconsider is within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. *Williams v. Covenant Medical Center*, 316 Ill. App. 3d 682, 693 (2000); *Higgens v. House*, 288 Ill. App. 3d 543, 546 (1997). Given the circumstances in this case, and given the sound policy reasons invoked by the trial judge, we cannot say that it was an abuse of discretion for the judge to strike the supplemental affidavit. The trial court therefore did not err in striking the supplemental affidavit and in denying the motion for reconsideration.

## CONCLUSION

For the reasons set forth above, we conclude that Supreme Court Rule 191(a) should be construed according to the plain and ordinary meaning of its language. Its provisions should be adhered to as written. In addition, an affidavit need not be notarized to comply with Rule 191(a), so long as it is either signed by the affiant or his name appears as one having taken an oath. We conclude further that it was not error for the trial court to strike Richards' original affidavit and grant the motions for summary judgment, nor was it error for the trial court to strike Richards' supplemental affidavit and deny plaintiff's motion for reconsideration. We therefore reverse the judgment of the appellate court, which reversed the judgment of the circuit court, and affirm the judgment of the circuit court.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

JUSTICE KILBRIDE, dissenting:

I respectfully dissent from the majority's sanctioning of summary judgment in this case when the trial court

failed to comply with the mandates of section 2—1005 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—1005 (West 2000)). Specifically, the trial court granted summary judgment in this case without the benefit of "the hearing" specifically contemplated by the Code. See 735 ILCS 5/2—1005(c) (West 2000).

Before setting out my opposition to the fundamental, procedural flaw in this case, I note my disagreement with the majority's interpretation of Rule 191's attachment requirement as it relates to the rule's particularity requirement. The linchpin of the majority's ultimate conclusion is that plaintiff's original affidavit failed because the plaintiff did not attach documents in support of the affidavit. If all other matters were equal, the majority's conclusion on that point would be correct. I contend, however, that all else was not equal and that the plaintiff was not afforded a level playing field.

The attachment issue was first raised by the defendants after plaintiff filed the original affidavit in opposition to the summary judgment motion. The defendants' supplemental replies and motions to strike alleged that the plaintiff's affidavit was improper and in violation of Supreme Court Rule 191. The supplemental pleadings in reply were filed the day before the trial judge granted summary judgment. Without affording the plaintiff any opportunity to respond to the new objections, the next day the trial court struck plaintiff's affidavit. After striking plaintiff's affidavit, the trial court then reasoned that summary judgment for defendant was inescapable because plaintiff had, in effect, presented no opposition to the summary judgment motion. In short, the trial court permitted the defendants to blindside the plaintiff by ignoring the summary judgment hearing requirement and depriving the plaintiff of the right to file a counteraffidavit or otherwise respond to the defendants' supplemental filings.

Section 2—1005 unequivocally contemplates a hearing on summary judgment motions. Section 2—1005 provides that the "opposite party may prior to or *at the time of the hearing* on the motion file counteraffidavits." (Emphasis added.) 735 ILCS 5/2—1005(c) (West 2000). If there is no hearing, how can the deadline for filing counteraffidavits be established? Section 2—1005 plainly grants the opposing party the right to present counteraffidavits at the time of the summary judgment hearing. Here, the opposing party (plaintiff) did not receive the benefit of a hearing where he might have cured any defects in the original response and affidavit.

The majority explains that the lack of a hearing in this case is of no moment because the local circuit court rules permit oral hearings on a discretionary basis and plaintiff waived the issue. I disagree with both of these reasons. First, it is inexplicable how the majority can countenance the usurpation of a statutory requirement by a local circuit court rule. The procedural requirements of section 2—1005 are plain and simple legal requirements, binding upon all Illinois trial courts.

Second, on the issue of waiver, we may consider issues not properly preserved by the parties in order to ensure a just result. *Geise v. Phoenix Co. of Chicago, Inc.*, 159 Ill. 2d 507, 514 (1994). Summary judgment is a drastic means of disposing of litigation and the court has a duty to construe the record strictly against the movant and liberally in favor of the nonmoving party. *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 518 (1993). Moreover, summary judgment should be entered only when the right of the moving party is clear and free from doubt. *Gilbert*, 156 Ill. 2d at 518.

In this case, waiver should not have been relied upon by the majority because of the procedural irregularities that occurred below. The trial court should have allowed plaintiff the opportunity to respond to defendants'

supplemental objections, filed the day before it awarded summary judgment to defendant. The trial court procedure used here is tantamount to blindfolding the opponent and then asking the opponent to shoot at a moving target. In addition, while plaintiff's arguments concerning the lack of a hearing on the summary judgment motion were not raised in a written motion, those arguments were raised before the trial court by plaintiff during oral argument on the motion to reconsider. Because plaintiff afforded the trial court the opportunity to correct its own error, the rationale behind the waiver rule is not present. See *People v. Segoviano*, 189 Ill. 2d 228, 253 (2000) (Rathje, J., specially concurring); *In re Marriage of Houghton*, 301 Ill. App. 3d 775, 780 (1998); see also *People v. Williams*, 173 Ill. 2d 48, 85 (1996) (application of the waiver rule is less rigid where the basis for the objection is the trial court's conduct).

Furthermore, I also disagree with the majority's decision regarding Rule 191 because of the practical implications of the majority's interpretation of the attachment requirement. Although I agree with the majority that the attachment requirement is more than a mere technicality, I do not believe that we should blindly demand strict compliance. Rather, the attachment of documents should be enforced with an eye towards the practicalities of managing a court file. For instance, at oral argument, plaintiff's counsel clarified that the same documents relied upon by the plaintiff's doctor were already filed of record. Why then should we require duplicative filings of the same documents relied upon by multiple parties in support of or in opposition to a summary judgment motion? A party should be permitted to comply with the attachment provision by incorporating by reference the identification of the pertinent papers.

Finally, on a minor point of reference by the majority, I also respectfully object to the notion that a litigant's

right to trial could be equated with a " 'free pass to trial' " (201 Ill. 2d at 344, quoting *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 92 (1st Cir. 1993)). If anything, the "free pass" in this case is the unwarranted grant of summary judgment and the defendants' pass from trial. Every litigant is entitled to a trial and that right may only be denied by summary judgment when the right of the moving party is clear and free from doubt. *Gilbert*, 156 Ill. 2d at 518.

Accordingly, for the reasons set forth in this separate opinion, I respectfully dissent.

CHIEF JUSTICE HARRISON joins in this dissent.