2021 IL App (1st) 120809-U
No. 1-20-0809
June 21, 2021

FIRST DIVISION

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| REALWHEELS CORPORATION, | ) | Appeal from the Circuit Court |
| | ) | Of Cook County. Law Division |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | The Honorable |
| JOHN R. CROSSAN and CROSSAN | ) | Patrick J. Sherlock, |
| INTELLECTUAL PROPERTY LAW, LLC | ) | Judge Presiding. |
| | ) | |
| Defendant-Appellee. | ) | |

JUSTICE WALKER delivered the judgment of the court. Justice Hyman and Justice Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court's order granting summary judgment to defendants is affirmed where the defendants presented evidence that plaintiff had not sustained damages, and the plaintiff did not present evidence of a reasonable basis for calculating damages or an affidavit explaining the additional discovery needed to prove damages.

¶ 2    RealWheels Corporation sued John Crossan for legal malpractice, alleging that RealWheels lost the rights to patent an invention because Crossan failed to file a timely patent application. The circuit court granted summary judgment in favor of Crossan based on a

finding that RealWheels could not prove damages. RealWheels argues that the court should not have entered summary judgment, the court improperly shifted the burden of production, and the court relied on inadmissible materials as evidence. We find that RealWheels failed to refute Crossan's evidence that RealWheels suffered no damages. Accordingly, we affirm the circuit court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4        RealWheels sold aerodynamic wheel covers, used mostly on trucks to improve gas mileage. In 2016, RealWheels invented a "twist and lock" wheel cover that drivers could install without tools. Two competitors, FlowBelow and Deflektor, also invented wheel covers drivers could install without tools. The three competitors used significantly different mechanisms for their wheel covers. FlowBelow and Deflektor obtained patents for their wheel covers.

¶ 5        In February 2016, Crossan, as RealWheels's attorney, filed a provisional application for a patent for the twist and lock wheel covers. When filing a revision of the provisional application, Crossan promised to remind RealWheels in January 2017 that RealWheels would need to file a regular patent application by February 15, 2017. January and February 2017 passed with no contact between Crossan and RealWheels. In February 2018, after Crossan had retired, John Polka, president of RealWheels, discovered that no regular patent application had been filed. Polka spoke with new attorneys to determine whether RealWheels could take any steps to get twist and lock wheel covers patented. The attorneys informed Polka that RealWheels had lost the opportunity to patent its twist and lock invention. RealWheels filed its complaint against Crossan in April 2018.

¶ 6        Crossan filed his motion for summary judgment in November 2019, after the date set for completion of fact discovery, but before the parties finished deposing expert witnesses. Crossan chose not to depose RealWheels's expert witnesses. Crossan appended to his motion for summary judgment Polka's deposition. Polka testified that he tried to sell his twist and lock wheel covers to two trucking companies, International and Schneider.  International chose FlowBelow's wheel covers, and Schneider chose Deflektor's.  Polka admitted that no one from FlowBelow or Schneider told him why they did not purchase RealWheels's products. Polka "would have to speculate" about the reasons International and Deflektor chose to buy the other wheel covers. Polka admitted that he explained the twist and lock invention in a brochure and in RealWheels's internet postings, and "all the people who look at the internet and see [the] brochure, anyone who wants to in the entire world can just copy it" because RealWheels has no patent.  Polka did not know whether anyone had copied the invention.

¶ 7        RealWheels's sales of twist and lock wheel covers fell from $198,000 in 2016 to $111,000 in 2017 and $110,000 in 2018. In his deposition, Polka said sales fell because RealWheels stopped pushing the product once it discovered the patent problem. Crossan pointed out that Polka said he discovered the patent problem in February 2018, well after RealWheels's sales of the product had sharply decreased.

¶ 8        Crossan argued that Polka's deposition showed RealWheels had not suffered any damages due to the failure to file the patent application. RealWheels, in its response to the motion for summary judgment, did not present any affidavits from its experts, and it did not present a Rule 191(b) affidavit explaining its need for further discovery. Ill. S. Ct. R. 191(b) (eff.).  The

circuit court granted Crossan's motion for summary judgment and later denied RealWheels's motion for reconsideration. RealWheels now appeals.

¶ 9                                        II. ANALYSIS

¶ 10        RealWheels contends that the circuit court should not have entered summary judgment in favor of Crossan, the court considered inadmissible materials and improperly shifted the burden of production, and the court should have granted RealWheels's motion for reconsideration.

¶ 11        The circuit court should enter summary judgment only "when the pleadings, depositions, admissions, and affidavits fail to establish a genuine issue of material fact, thereby entitling the movant to judgment as a matter of law." General Auto Service Station v. Maniatis, 328 Ill. App. 3d 537, 543 (2002). "A defendant who moves for summary judgment may meet its initial burden of production in at least two ways: (1) by affirmatively disproving the plaintiff's case by introducing evidence that, if uncontroverted, would entitle the movant to judgment as a matter of law (traditional test) (citation), or (2) by establishing that the nonmovant lacks sufficient evidence to prove an essential element of the cause of action (*Celotex* test). (*** *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986) ***)." *Williams v. Covenant Medical Center*, 316 Ill. App. 3d 682, 688 (2000). We review the order granting summary judgment *de novo*. *In re Estate of Rennick*, 181 Ill. 2d 395, 401 (1998).

¶ 12        RealWheels characterizes Crossan's motion as a *Celotex* motion, challenging RealWheels to produce evidence of damages, but Crossan relies on Polka's deposition as proof that RealWheels suffered no compensable damages. "Inasmuch as the damages claimed by defendant, as set forth in his examination before trial, are neither actual nor ascertainable and

are speculative in nature, he failed to establish a prima facie case of legal malpractice." *Collard & Roe, P.C. v. Vlacancich*, 6 Misc. 3d 17, 18–19, 789 N.Y.S.2d 599, 600 (2004); see *IGEN, Inc. v. White*, 250 A.D.2d 463, 464-65 (1998) ("What plaintiff's argument overlooks is that it has sustained no injury unless there has been an infringement against which its patent would have afforded a right of recovery"). We find the evidence supporting the motion sufficient to shift the burden to RealWheels "to present some factual basis that would arguably entitle them to a judgment under the applicable law." *Williams*, 316 Ill. App. 3d at 689.

¶ 13     A federal case explores the kind of showing needed to survive a summary judgment motion in a similar setting. In *AS Tech Intern., LLC v. Husick*, 676 F. Supp. 2d 389 (E.D. Pa. 2009), the plaintiffs sued their attorneys for professional negligence in failing to complete two patent applications in a timely manner. For one pharmaceutical invention, the plaintiffs presented a report by an expert, Cashman, on the amounts the plaintiffs lost due to the delay in issuing the patent. The court found the report sufficient to create an issue of fact.  The court stated:

> "[Defendants] argue that there is no evidence of a potential buyer of that patent and therefore the sale price and the resulting calculations of royalty income are based on speculation. Plaintiffs respond that they have not yet attempted to market this invention because they believe the invention will be most valuable after it is patented. Therefore, the current absence of a potential buyer does not mean the invention is altogether unmarketable. Instead, per plaintiffs, the fair market value of such a patent is contained in the Cashman report which marshals the considerable experience of Cashman in the pharmaceutical field to provide a list of potential buyers, a list of comparable transactions and

projections of sale price and royalty income." *AS Tech*, 676 F. Supp. 2d at 405-06.

¶ 14    For the second invention, designed to identify livestock, the court entered judgment in favor of the defendants. The court found:

"[P]laintiffs cite five exhibits in support of their contention that '[p]laintiffs, collectively, based upon their broad experience with comparable situations in their own careers and in the animal, industry made reasoned and conservative estimates of the values of the patents.' (citations). Review of each of the exhibits reveals no support for the valuation of the livestock identification invention. ***. Therefore, plaintiffs will be unable to provide a reasonable basis for the jury to calculate loss." *AS Tech*, 676 F. Supp. 2d at 406.

¶ 15    The federal court decision accords with Illinois cases requiring either an affidavit explaining fully the basis for an opinion on damages, or a Rule 191(b) affidavit explaining the discovery the party needs to conduct to prove damages. See *Robidoux v. Oliphant*, 201 Ill. 2d 324, 336-38 (2002); *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 48. Polka's deposition, in which he admitted that he knew of no evidence anyone had copied his unpatented invention, he could only speculate as to the reasons he could not sell his wheel covers to major potential buyers, and sales of the wheel covers fell sharply before he knew of any patent problem, presented a basis on which a jury could find RealWheels suffered no damages. To respond, RealWheels needed to present evidence showing a reasonable basis for calculating damages. See *AS Tech*, 676 F. Supp. 2d at 405-06 RealWheels presented neither an affidavit from its experts showing the basis for a calculation of damages, nor an affidavit explaining the discovery RealWheels needed to conduct to prove damages.

6

¶ 16    "Recovery of lost profits cannot be based upon conjecture or speculation and the evidence must afford a reasonable basis for the computation of damages. [Citation]. The plaintiff bears the burden of proving lost profit damages to a reasonable degree of certainty." *Meriturn Partners, LLC v. Banner & Witcoff, Ltd.*, 2015 IL App (1st) 131883, ¶ 18. Because RealWheels failed to offer any evidence that could support a finding it suffered damages due to the lack of a patent, the circuit court correctly granted summary judgment in favor of Crossan. We must affirm the judgment regardless of whether the circuit court relied on incorrect reasons or inadmissible evidence when it reached the correct result. *Arthur v. Lutheran General Hospital*, 295 Ill. App. 3d 818, 823 (1998). The circuit court correctly denied the motion for reconsideration, as that motion presented no new evidence and no new grounds for finding damages.

¶ 17                                III. CONCLUSION

¶ 18    The deposition of RealWheels's president supports a finding that RealWheels suffered no damages from the loss of the patent. RealWheels failed to present other evidence that could support a finding of compensable damages. Accordingly, we affirm the entry of summary judgment in favor of Crossan.

¶ 19    Affirmed.