# Illinois Official Reports

## Appellate Court

---

### *Enbridge Pipeline (Illinois), LLC v. Temple*, 2017 IL App (4th) 150346

---

| | |
|---|---|
| Appellate Court Caption | ENBRIDGE PIPELINE (ILLINOIS), LLC, n/k/a Illinois Extension Pipeline Company, LLC, Plaintiff-Appellee, v. CARLA S. TEMPLE, as Trustee of the Carla S. Temple Family Trust; NONRECORD CLAIMANTS; and UNKNOWN OWNERS, Defendants-Appellants.—ENBRIDGE PIPELINE (ILLINOIS), LLC, n/k/a Illinois Extension Pipeline Company, LLC, Plaintiff-Appellee, v. TERRY ADREON, as Trustee of the Residuary Trust Under the Last Will and Testament of Robert H. Davis; NONRECORD CLAIMANTS; and UNKNOWN OWNERS, Defendants-Appellants.—ENBRIDGE PIPELINE (ILLINOIS), LLC, n/k/a Illinois Extension Pipeline Company, LLC, Plaintiff-Appellee, v. JPR FAMILY PARTNERSHIP LP, NONRECORD CLAIMANTS, and UNKNOWN OWNERS, Defendants-Appellants. |
| District & No. | Fourth District<br>Docket Nos. 4-15-0346, 4-15-0349, 4-15-0360 cons. |
| Filed | July 6, 2017 |
| Decision Under Review | Appeal from the Circuit Court of McLean County, Nos. 14-ED-5, 14-ED-8, 14-ED-28; the Hon. Paul G. Lawrence, Judge, presiding. |
| Judgment | Vacated; cause remanded with directions. |
| Counsel on Appeal | Mercer D. Turner II, of Law Office of Mercer Turner, P.C., of Bloomington, for appellants. |

Gerald A. Ambrose, Steven J. Horowitz, and Dale E. Thomas, of Sidley Austin LLP, of Chicago, and Jacob E. Gancarczyk and John M. Spesia, of Spesia & Ayers, of Joliet, for appellee.

Panel          JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Holder White and Pope concurred in the judgment and opinion.

## OPINION

¶ 1          In April 2014, the Illinois Commerce Commission (Commission) granted plaintiff, Enbridge Pipeline (Illinois), LLC, now known as the Illinois Extension Pipeline Company, LLC (IEPC), eminent-domain authority to acquire easements over certain real estate for the planned construction of an approximately 170-mile liquid petroleum (oil) pipeline known as the Southern Access Extension (SAX project).

¶ 2          During June and July 2014, IEPC filed separate complaints for "condemnation of permanent and temporary easements for common-carrier pipeline" (condemnation complaints) against defendants (1) Carla S. Temple (Temple) (McLean County case No. 14-ED-5 and this court's case No. 4-15-0346), (2) Terry Adreon (Adreon) (McLean County case No. 14-ED-8 and this court's case No. 4-15-0349), and (3) JPR Family Partnership LP (JPR) (McLean County case No. 14-ED-28 and this court's case No. 4-15-0360) (collectively, landowners). IEPC sought to obtain right-of-way and easement interests in landowners' respective properties and to determine just compensation for its interests. Thereafter, landowners each filed a "traverse and motion to dismiss" (traverse motion), requesting dismissal of IEPC's condemnation complaints. In November 2014, the trial court denied landowners' traverse motions.

¶ 3          In February 2015, IEPC filed a motion for summary judgment under section 2-1005 of the Code of Civil Procedure (Civil Code) (735 ILCS 5/2-1005 (West 2014)), arguing that no genuine issue of material fact existed regarding the just compensation IEPC should pay to landowners for its right-of-way and easement interests. After landowners responded to the summary judgment motion, IEPC essentially contended that because (1) landowners had failed to file counteraffidavits in opposition to IEPC's motion for summary judgment as required by Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013) and (2) IEPC properly complied with Rule 191(a) by filing affidavits in support of its motion, IEPC was entitled to judgment as a matter of law on the issue of just compensation. Following a March 2015 hearing, the trial court granted IEPC's summary judgment motion and awarded just compensation totaling $45,000 (Temple $1000, Adreon $21,000, and JPR $23,000).

¶ 4          Landowners appeal, raising numerous claims that challenge the trial court's rulings. For the reasons that follow, we vacate the trial court's denial of landowners' traverse motions and remand with directions for further proceedings.

¶ 5                                    I. BACKGROUND

¶ 6        The issues presented in this appeal concern the trial court's rulings on the following issues: (1) landowners' traverse motions, which include landowners' request for discovery prior to the traverse hearing and (2) IEPC's motion for summary judgment on its condemnation complaints. The following chronological discussion is confined to matters pertinent to those two issues.

¶ 7                                  A. Procedural History

¶ 8        In *Enbridge Energy (Illinois), L.L.C. v. Kuerth*, 2016 IL App (4th) 150519, ¶¶ 6-23, 69 N.E.3d 287, and *Enbridge Pipeline (Illinois), LLC v. Hoke*, 2017 IL App (4th) 150544, ¶¶ 6-23, this court chronicled the extensive procedural history regarding IEPC's intent to (1) construct, operate, and maintain the SAX project under section 15-401 of the Common Carrier by Pipeline Law (Pipeline Law) (220 ILCS 5/15-401 (West 2006)) and (2) acquire, when necessary, private property under eminent-domain authority to install the SAX project as permitted by section 8-509 of the Public Utilities Act (220 ILCS 5/8-509 (West 2006)). In the interest of brevity, we provide only a truncated synopsis to place landowners' appeals in context.

¶ 9                    1. *IEPC's Application for a Certificate in Good Standing*
                            *and Eminent-Domain Authority*

¶ 10       In August 2007, IEPC applied for a certificate in good standing, seeking the Commission's authorization to (1) construct, operate, and maintain the SAX project and (2) acquire, when necessary, private property under eminent-domain authority. Specifically, IEPC sought (1) a 60-foot wide permanent easement right-of-way for the pipeline and (2) an additional 60-foot temporary easement to facilitate construction.

¶ 11       In July 2009, the Commission granted IEPC a certificate in good standing, which authorized construction of the SAX project. The Commission, however, denied IEPC's request for eminent-domain authority, urging, instead, that IEPC continue negotiations with recalcitrant landowners who had declined IEPC's compensation offers. The Commission advised IEPC that it could renew its request for eminent-domain authority by "demonstrating that it has made reasonable attempts to obtain easements, through good-faith negotiations."

¶ 12       Some affected landowners (intervenors) appealed the Commission's grant of a certificate in good standing, and this court affirmed. *Pliura Intervenors v. Illinois Commerce Comm'n*, 405 Ill. App. 3d 199, 200, 942 N.E.2d 576, 578 (2010) (*Intervenors I*). Specifically, we rejected intervenors' argument that the Commission erred by determining that (1) IEPC was fit, willing, and able to construct, operate, and maintain an oil pipeline and (2) a public need existed for the pipeline. *Intervenors I*, 405 Ill. App. 3d at 208-09, 942 N.E.2d at 584-85.

¶ 13                  2. *IEPC's Renewed Petition for Eminent-Domain Authority*

¶ 14       In July 2013, IEPC renewed its request for eminent-domain authority, seeking to condemn specific tracts of land traversed by the planned SAX project route because the owners of those respective properties had either (1) refused to negotiate with IEPC or (2) declined IEPC's compensation offers despite extensive negotiations. Following a December 2013 administrative hearing, an administrative law judge (ALJ) recommended that the Commission

- 3 -

grant IEPC eminent-domain authority. In April 2014, the Commission accepted the ALJ's recommendation and granted IEPC eminent-domain authority. In so doing, the Commission explained that the grant of a request for eminent-domain authority under section 8-509 of the Public Utilities Act requires "a utility [to] show that it made a reasonable attempt to acquire the property at issue." Intervenors affected by the Commission's grant of eminent-domain authority appealed, and this court affirmed. *Pliura Intervenors v. Illinois Commerce Comm'n*, 2015 IL App (4th) 140592-U (*Intervenors II*). Pertinent to this appeal, we rejected intervenors' argument that the Commission's grant of eminent-domain authority was not supported by substantial evidence that IEPC had engaged in good-faith negotiations. *Id.*

¶ 15                                   3. *IEPC's Motion To Reopen*

¶ 16        In May 2014, IEPC filed a "Motion to Reopen and Amend Order Concerning Diameter of the [SAX project]," requesting an amendment to the July 2009 certificate in good standing that the Commission issued. Specifically, IEPC sought to reduce the diameter of the SAX project from 36 to 24 inches, explaining that uncertain economic conditions and market demand for a different grade of crude oil caused IEPC to reevaluate the initial parameters of the SAX project. In December 2014, the ALJ recommended that the Commission grant IEPC's amendment, subject to certain conditions. The Commission later determined that public convenience and necessity required issuance of an amended certificate to authorize a 24-inch pipeline. Intervenors appealed, and this court affirmed the Commission's order. *Pliura Intervenors v. Illinois Commerce Comm'n*, 2016 IL App (4th) 150084-U (*Intervenors III*).

¶ 17                              B. IEPC's Final Offers to Landowners and
                                           Condemnation Complaints

¶ 18        In separate letters dated May 19, 2014, IEPC proffered final offers of (1) $1035 to Temple, (2) $84,795 to Adreon, and (3) $85,200 to JPR for a 60-foot permanent right-of-way and a 60-foot temporary work-space area to be used during construction of the SAX project. In total, IEPC sought (1) permanent easements traversing approximately 7.371 acres of landowners' parcels and (2) temporary easements traversing approximately 8.062 acres landowners' parcels. In exchange for its aggregate land interests, IEPC offered landowners $171,030 in total compensation. IEPC conveyed that (1) its offer would expire in 10 days and (2) if landowners rejected the offer, IEPC would file suit against landowners to enforce its interests.

¶ 19        Beginning in June 2014—after landowners failed to respond to its offers—IEPC filed separate condemnation complaints, seeking to determine the just compensation for its right-of-way and easement interests in landowners' respective properties. Appended to IEPC's motion was the Commission's (1) July 2009 order, which granted IEPC authorization to construct the SAX project and (2) April 2014 order, which granted IEPC eminent-domain authority.

¶ 20               C. Landowners' Discovery Requests and Traverse Motions
¶ 21                                   1. *The Parties' Filings*
¶ 22        In August 2014, landowners filed a "request to produce documents" pertaining to the SAX project on the following general topics: (1) project planning and specifications, (2) safety plans, (3) oil spill projections, (4) shipping commitments, (5) ownership interests, and (6)

regulatory and governmental reporting not involving the Commission. In September 2014, landowners filed a traverse motion, challenging IEPC's right to condemn a portion of their respective parcels to install and maintain the SAX project. In particular, landowners alleged that the following circumstances required dismissal of IEPC's condemnation complaints:

"12. The property sought to be acquired in this proceeding is not necessary or convenient for the purpose for which it is sought to be taken. ***

13. The amount of property sought to be taken by [IEPC] is in excess of [IEPC's] needs.

14. [IEPC] does not seek to use the property sought to be acquired by this proceeding for a public purpose. ***

15. There has been no bona fide pre-petition attempt to offer *** landowner[s] just compensation and damages to be paid for the property sought to be taken, based on the condemnation concept of fair market value."

In their prayer for relief, landowners requested that the trial court dismiss IEPC's condemnation complaints or, in the alternative, set a discovery schedule and, thereafter, conduct an evidentiary hearing on the aforementioned issues raised.

¶ 23    In response to landowners, IEPC filed an objection to landowners' discovery requests in which IEPC acknowledged that landowners' discovery requests pertained to the issues of "just compensation 'and issues related to the [traverse] motion.' " IEPC based its objection, in part, on its assertion that landowners "are collaterally estopped from re-litigating the issues of whether [IEPC] is 'fit, willing, and able' to operate the pipeline, 'public need'[,] and 'public convenience and necessity' already decided by [this court] in [*Intervenors I*]."

¶ 24                    2. *The Hearing on IEPC's Objection to Landowners'*
                            *Discovery Request*

¶ 25    We note that at the time of the October 2014 hearing on IEPC's objections to landowners' discovery request, (1) this court had published *Intervenors I*, which confirmed the Commission's July 2009 grant of a certificate in good standing issued to IEPC in docket No. 07-0446; (2) *Intervenors II*, which challenged the Commission's grant of eminent-domain authority to IEPC in docket No. 13-0446, was pending before this court; and (3) the parties were aware that pending before the Commission was IEPC's motion to amend the certificate in good standing in docket No. 07-0446 to reflect the installation of a 24-inch diameter pipeline instead of a 36-inch diameter pipeline, which this court had yet to consider in *Intervenors III*.

¶ 26    At the October 2014 hearing, IEPC characterized landowners' August 2014 request to produce documents, as follows:

"[Landowners] *** are asking the [trial] court *** for a *de novo* review and a *de novo* proceeding of all the evidence that was presented to the *** Commission. [Landowners] want to start over with what is about five years of discovery at the *** Commission. [Landowners] suggest to this court that they need discovery even though all of these issues are contained in the public records at the *** Commission and even though *** most, if not all, [of] the parties had intervened at the Commission."

¶ 27    IEPC contended that landowners' discovery request was an attempt to get the trial court to "second guess" the appellate court "on the issues of public purpose [and] public need," which IEPC asserted were already decided by the Commission and later affirmed by this court. IEPC

- 5 -

also argued that this court's decision in *City of Springfield v. West Koke Mill Development Corp.*, 312 Ill. App. 3d 900, 728 N.E.2d 781 (2000), stood for the proposition that a traverse motion is essentially a motion to dismiss under section 2-619(a)(9) of the Civil Code (735 ILCS 5/2-619(a)(9) (West 2014)), and thus, the court was not required to conduct an evidentiary hearing, which would necessitate discovery.

¶ 28 Landowners responded by citing this court's case in *Illinois Power Co. v. Lynn*, 50 Ill. App. 3d 77, 365 N.E.2d 264 (1977), for the proposition that trial courts were not preempted from inquiring into the same subject matter that the Commission considered during certification proceedings. Landowners also disputed IEPC's interpretation that *Koke Mill* stood for the proposition that a traverse motion is essentially a motion to dismiss under section 2-619(a)(9) of the Civil Code. In particular, landowners distinguished *Koke Mill* by noting that, in that case, the defendant did not request discovery. In the instant case, landowners averred, "That is absolutely contrary to what is happening here. [Landowners] have filed requests for discovery challenging pretty much the public use, the public benefit, [and] the good[-]faith negotiations."

¶ 29 In granting IEPC's objection and denying landowners' discovery request, the trial court ruled, as follows:

> "The [trial] court agrees with [IEPC] and *** the substantial case law that [IEPC] has tendered *** and cited to the court in that the decision of the [Commission] cannot be collaterally attacked and, also the decision of the Fourth District in [*Intervenors I*] and that a *de novo* hearing will not occur. *** [B]ecause of what's been pled in the traverse motion, all of those discovery requests relating to the [Commission's] decision that's already been made *** the court is going to sustain the objection."

As to landowners' claim that IEPC failed to negotiate in good faith prior to filing its condemnation complaints, the court ruled that sufficient evidence was provided showing that IEPC's final offers were 125% of the fee value for landowners' respective properties, to which landowners failed to respond within the 10-day period provided.

¶ 30                          3. *The Hearing on Landowners' Traverse Motion*

¶ 31 To facilitate the reader's understanding of a traverse motion, we provide the following brief synopsis of the motion's purpose:

> " 'A traverse and motion to dismiss challenge plaintiff's right to condemn defendants' property. [Citations.] It is settled law in Illinois that when a traverse is filed, the burden is on the plaintiff to make a *prima facie* case of the disputed allegations. [Citations.] A *prima facie* case for the necessity of a condemnation is made by introducing a resolution or ordinance of the governing body which makes a finding that the condemnation is necessary. [Citations.] The agency that has been granted the power of eminent domain, rather than the court, has the authority to decide whether the exercise of the power is necessary to achieve an authorized purpose. Absent a clear abuse of this authority, the court will not inquire into the need or propriety of its exercise. [Citations.] Accordingly, where plaintiff establishes a *prima facie* case, it becomes the burden of defendant to show that there was an abuse of discretion by the governing board. [Citations.]' " *Enbridge Energy (Illinois), L.L.C. v. Kuerth*, 2016 IL App (4th) 150519, ¶ 51, 69 N.E.3d 287 (quoting *Lake County Forest Preserve District v. First National Bank of Waukegan*, 154 Ill. App. 3d 45, 51, 506 N.E.2d 424, 428 (1987)).

¶ 32    At the November 2014 hearing, landowners informed the trial court that their "principal defense" was the relationship between IEPC and Marathon Petroleum Company—a co-owner of and expected oil transporter on the SAX project. Landowners explained that because the court had denied their discovery request on that issue in October 2014, they were not able to proceed further.

¶ 33    In response, IEPC informed the trial court that it was relying, in part, on arguments IEPC made at an October 2014 hearing involving two cases not at issue in this appeal. (Based on the parties' agreement in August 2014, the trial court consolidated the 3 cases in the instant appeal with 18 other cases involving similarly situated landowners. The October 2014 hearing pertained to landowners' discovery request in 2 of the 21 consolidated cases. In February 2016, this court *sua sponte* directed the parties to prepare separate briefs for the three cases at issue because of distinct factual differences. See *Enbridge Pipeline (Illinois), LLC v. Kiefer*, 2017 IL App (4th) 150342 (where this court considered the appeal in the other 18 cases).

¶ 34    Our review of the arguments that IEPC raised at the October 2014 hearing shows that IEPC argued generally that because a traverse motion is basically a section 2-619(a)(9) motion to dismiss, landowners were required—but failed—to raise an affirmative matter that defeated IEPC's condemnation complaints. See *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 31, 988 N.E.2d 984 (a section 2-619(a)(9) motion to dismiss "admits all well-pleaded facts and all reasonable inferences therefrom, and asserts an affirmative matter outside the complaint [that] bars or defeats the cause of action"). IEPC also argued that landowners were collaterally estopped from challenging the Commission's (1) July 2009 grant of a certificate in good standing to IEPC, which authorized construction of the SAX project, and (2) April 2014 order, which granted IEPC eminent-domain authority.

¶ 35    In dismissing landowner's traverse motion in the instant case, the trial court stated that it was doing so for "similar reasons" as in the October 2014 hearing. In that hearing, the court found, in pertinent part, as follows:

> "[A]s to whether or not [IEPC] is vested with the authority to acquire [landowner's] property, certainly, the court has somewhat dealt with this issue in the past and has indicated that the decision by the [Commission] is going to create a rebuttable presumption that we've talked about earlier, and that decision cannot be collaterally attacked. The Fourth District has already upheld that decision [in *Intervenors I*.] *** [T]his court is also not going to conduct a *de novo* proceeding on the issues of public benefit, use, or enjoyment or whether the [SAX project] is necessary for a public purpose."

¶ 36                          D. IEPC's Motion for Summary Judgment
¶ 37                        1. *Landowners' Disclosures and Counterclaim*
¶ 38    In October 2014, landowners disclosed their controlled expert witnesses: (1) Dale Aupperle, a licensed real estate broker; (2) Jeremy Crouch, a licensed real estate appraiser; and (3) Royce Don Deaver, a registered professional mechanical engineer. See Ill. S. Ct. R. 213(f)(3) (eff. Jan. 1, 2007) (defining a controlled expert witness as a "party's retained expert" and setting forth the mandatory disclosure requirements that the party calling the expert must satisfy).

¶ 39    In December 2014, landowners filed a counterclaim, seeking compensation for the damage to the remainder of their respective parcels caused by the impending installation of the SAX project. That month, landowners also filed "The McLean County SAX Pipeline Farm Valuation Report," written by Aupperle and Crouch. The substance of that report provided opinions as to the fair-market value of IEPC's interests in landowners' respective properties. The report divided the valuation into the following three categories: (1) permanent easements, (2) temporary easements, and (3) damages to the remainder of the respective properties following installation of the SAX project. Despite mentioning that the report was a "collaborative effort" between Aupperle and Crouch, the report confirmed that the valuation opinions and conclusions expressed therein were made solely by Aupperle. (Hereinafter, we refer to the McLean County SAX Pipeline Farm Valuation Report as the "Aupperle report" and attribute the valuation opinions and conclusions contained therein to Aupperle.)

¶ 40    In February 2015, landowners filed a report written by Deaver in which he provided expert opinions regarding the risks landowners would assume after installation of the SAX project. Deaver noted such risks included (1) the consequences that arise after an oil spill, (2) the potential for an oil company to elevate profits over public safety, (3) the lack of effective deterrents for an oil company's safety violations, and (4) a landowner's inability to protect his or her interests by, for instance, obtaining insurance against such risks. (Deaver's report is not at issue in this appeal because neither party relied on that report during the March 2015 hearing on IEPC's motion for summary judgment.)

¶ 41                              2. *IEPC's Summary Judgment Filing*

¶ 42    In February 2015, IEPC filed a motion for summary judgment on the issues of just compensation and damages to the remainder raised by its condemnation complaints. Appended to IEPC's summary judgment motion were the following three documents.

¶ 43    A "Real Estate Appraisal Project Summary" report by Edward J. Batis, an Illinois certified general real estate appraiser, in which Batis summarized the "essential components of the appraisal process" applicable to each of the individual properties he appraised. Batis included 18 supplemental reports detailing the just compensation and remainder damage valuations he computed for each of landowners' respective properties. Included was a February 2015 affidavit in which Batis affirmed that his appraisals complied with the Uniform Standards of Professional Appraisal Practice (USPAP) and the Code of Professional Ethics of the Appraisal Institute. Batis also affirmed that he had personal knowledge of the land valuation appraisals and, if required, he would testify competently to the content of his summary and supplemental reports.

¶ 44    IEPC also attached a "Real Estate Appraisal Report Project Summary" by W. Bradley Park, an Illinois certified general real estate appraiser, in which Park provided his opinions regarding the appropriate just compensation for the 18 parcels at issue. Park appended separate supplemental report summaries, which provided detailed descriptions of landowners' properties, a highest and best use analysis, and an examination of the "impact of the taking on the market values of the remainder properties." Park added that his intent was to "provide sufficient detail and information to understand the opinions set forth in each of the separate reports." Park signed a February 2015 affidavit, affirming that his appraisals complied with the USPAP and the Code of Professional Ethics of the Appraisal Institute. Park also affirmed that

he had personal knowledge of the aforementioned reports and, if required, he would testify competently to the content contained therein.

¶ 45     IEPC also appended to its summary judgment motion the Aupperle report. In its memorandum in support of its summary judgment motion, IEPC challenged the admissibility of the Aupperle report by characterizing it as "nothing short of an outrageous set of unqualified, baseless, purely speculative, and highly prejudicial statements that fail to meet any standard for admissibility under Illinois law."

¶ 46                    3. *Landowners' Response to IEPC's Summary Judgment Motion*
                              *and IEPC's Reply*

¶ 47     On March 25, 2015, landowners filed a response to IEPC's motion for summary judgment. Landowners argued generally that (1) the valuation opinions in the Aupperle report were credible and admissible and (2) the USPAP standard has not been adopted by Illinois. The sole attachment to landowners' response was an October 2014 article from Illinois Realtor Magazine (Elizabeth A. Urbance, *BPOs and CMAs to Become Licensed Activities Under the Illinois Real Estate License Act of 2000*, Illinois Realtor, Oct. 2014, at 22, http://www.illinoisrealtor.org/node/3662 (last visited June 2, 2017) ("BPO" is an acronym for "broker price opinions" and "CMA" is an acronym for "comparative market analyses")). Landowners did not file any counteraffidavits with their response.

¶ 48     Later that month, landowners filed a "Supplement of Facts Supporting [Landowners'] Response to [IEPC's] Motion for Summary Judgment." Landowners' filing—which was not signed or sworn—contained 173 pages of information, segregated as follows: (1) an excerpt taken from IEPC's website listing "reportable spills" for 2010; (2) Marathon Petroleum Company's ownership, shipping commitment, and proposed use of the SAX project; (3) IEPC's original request for a certificate in good standing; (4) IEPC's established route for the SAX project; (5) excerpts from a McLean County zoning ordinance; (6) two September 2009 letters from IEPC, conveying offers to specific landowners; (7) Deaver's curriculum vitae; (8) a printout purporting to show that Aupperle is a licensed real estate broker; and (9) various maps showing different IEPC pipeline routes.

¶ 49     Shortly thereafter, IEPC filed a reply to landowners' response, renewing its assertions that it was entitled to judgment as a matter of law. Specifically, IEPC noted that in their response, landowners "proffer no affidavits, no reports, no exhibits, and no judicial analyses to the court." IEPC's reply also noted that in condemnation proceedings involving landowners from De Witt County, the trial court had barred Aupperle's valuation opinions.

¶ 50                    4. *The Hearing on IEPC's Motion for Summary Judgment*
¶ 51     At the March 2015 hearing on IEPC's motion for summary judgment, the parties' arguments focused on the admissibility of the Aupperle report. IEPC characterized the Aupperle report as fatally flawed. Landowners challenged (1) the applicability of the case law IEPC relied upon, (2) the claims IEPC raised concerning the credibility of the Aupperle report, and (3) the threshold for admission of valuation testimony, which landowners claimed was "very low." During IEPC's rebuttal argument, the following exchange occurred:

"THE COURT: What did the judge down in De[ ]Witt [County] do? He excluded Aupperle's opinion[?] [The court] remember[s] you mentioned it last time, but [the court does not]—

[IEPC'S COUNSEL]: I think we provided the Court with the order form, from De Witt County. Yes, *** Aupperle has been barred, and *** Crouch has been barred, and *** Deaver, who was mentioned here but not mentioned in the Aupperle report, was also barred.

THE COURT: For similar reasons that you raised?

[IEPC'S COUNSEL]: For, I believe, exactly the reasons that we have raised here.

THE COURT: But that was not a motion for summary judgment? That was just a bar?

[IEPC'S COUNSEL]: That was a motion *in limine* to bar.

THE COURT: Is there *** other evidence in that case[;] other appraisals that haven't gotten to that issue yet?

[IEPC'S COUNSEL]: There are in those pending cases where Aupperle, Crouch, and Deaver were barred, the only remaining evidence is the evidence of [IEPC's] appraisers.

THE COURT: *** All right."

¶ 52        Thereafter, the trial court ruled as follows:

"[T]he court [will] exclude [Aupperle's] entire opinion that was filed here with the Court in similar fashion as was done in De[ ]Witt County, and because of the fact that the Court would then be excluding the opinion evidence of *** Aupperle, that does mean [landowners] wouldn't have any admissible value testimony at this point in time to value the permanent [and] temporary easements and any remainder damage, and so therefore, the only opinions that are available then would be the opinions filed by [IEPC], and so there would be no issue of material fact, and the Court would therefore grant the motion for summary judgment."

In its later written order, the court awarded landowners compensation totaling $45,000.

¶ 53        This appeal followed.

¶ 54                                              II. ANALYSIS

¶ 55        As previously noted, the issues presented in this appeal concern the trial court's rulings on the following issues: (1) landowners' traverse motions, which include landowners' request for discovery prior to the traverse hearing, and (2) IEPC's motion for summary judgment on its condemnation complaints. Prior to addressing the merits of those claims, we first explain the unusual procedural posture of this appeal.

¶ 56                                      A. The Procedural Posture

¶ 57        While the parties' appeal in the instant case was pending before this court, we decided *Kuerth*, 2016 IL App (4th) 150519, 69 N.E.3d 287. In *Kuerth*, Livingston County landowners challenged IEPC's authority to condemn a portion of their respective parcels for the SAX project. In January 2017, this court *sua sponte* directed the parties in the instant case to file supplemental briefs consistent with the views we expressed in *Kuerth*. The parties have done

so. In the interest of brevity, we briefly summarize *Kuerth* to provide context.

¶ 58                                    B. This Court's Decision in *Kuerth*

¶ 59    In *Kuerth*, we considered the propriety of the trial court's rulings regarding (1) evidentiary matters prior to the condemnation proceeding and (2) the denial of the landowners' traverse motions in which the landowners sought to challenge IEPC's interest in condemning a portion of their property to install the SAX project. *Id.* ¶ 85.

¶ 60    As to the trial court's evidentiary ruling, we rejected the landowners' specific argument (among many presented) that the trial court abused its discretion by barring the landowners' testimony concerning just compensation (*id.* ¶ 95).

¶ 61    Prior to reaching the merits of the trial court's rulings on the landowners' traverse motions, we briefly discussed the rationale underpinning the legislature's January 2007 repeal of article VII of the Civil Code (Pub. Act 94-1055, § 95-1-5 (eff. Jan. 1, 2007) (repealing 735 ILCS 5/7-101 to 7-129)), which had previously governed eminent domain proceedings, and its replacement, the Eminent Domain Act (735 ILCS 30/1-1-1 to 99-5-5 (West 2014)). *Kuerth*, 2016 IL App (4th) 150519, ¶ 125, 69 N.E.3d 287. We noted that the Eminent Domain Act added a new provision, section 5-5-5(c), which stated, in pertinent part, the following:

> " 'Evidence that the [Commission] has granted a certificate or otherwise made a finding of public convenience and necessity for an acquisition of property (or any right or interest in property) for private ownership or control (including, without limitation, an acquisition for which the use of eminent domain is authorized under the Public Utilities Act ***) to be used for utility purposes creates a rebuttable presumption that such acquisition of that property (or right or interest in property) is (i) primarily for the benefit, use, or enjoyment of the public and (ii) necessary for a public purpose.' " *Id.* (quoting 735 ILCS 30/5-5-5(c) (West 2014)).

¶ 62    This court then discussed the operation of rebuttable presumptions in civil proceedings and the amount of evidence required to rebut a presumption. *Id.* ¶¶ 131-33. We noted that in addition to typical presumptions, which require "sufficient" evidence to rebut, trial courts have occasionally imposed a greater burden of production upon a party challenging a presumption, which is sometimes referred to as a strong presumption. *Id.* ¶ 133. "Due to compelling policy considerations, a party challenging a strong presumption must present clear and convincing evidence to rebut the presumption." *Id.* ¶ 134. From that premise, we then outlined the rationale underlying this court's holding that the Commission's determinations were entitled to strong deference, which could be rebutted only with clear and convincing evidence to the contrary. *Id.* ¶ 138. Specifically, we held as follows:

> "[T]he Commission, having been vested with authority by the legislature to resolve the technical issues that come before it, and presumably possessing the expertise to do so, should similarly be accorded deference with regard to the issues concerning the construction of a pipeline in this state. Deeming the Commission's findings worthy of a strong presumption is merely an acknowledgment of that expertise and would serve as a caution to trial courts to not easily disregard the finding of the Commission. Strong public policy favors that the landowners should be required to present clear and convincing evidence before the applicable presumptions burst." *Id.* ¶ 140.

- 11 -

¶ 63        Although not statutorily mandated, we held further that the Commission's determination that IEPC had negotiated in good faith with landowners, which was also based on the Commission's presumed expertise in determining whether to grant an entity eminent-domain authority, warranted "substantial deference." *Id.* ¶ 148.

¶ 64        In *Kuerth*, we concluded that the court's denial of the landowners' traverse motions effectively deprived them of the ability to (1) rebut the aforementioned statutory presumptions and (2) refute the Commission's determination that IEPC had negotiated in good faith. *Id.* In so concluding, we vacated the trial court's denial of landowners' traverse motions and remanded the matter back to the trial court for the limited purpose of conducting a proper traverse hearing. *Id.* ¶ 151. We then provided authority for our decision to retain jurisdiction of the matters presented despite our remand. *Id.* ¶¶ 154-58.

¶ 65        We reaffirm our holding in *Kuerth*, and because we find the facts presented in the instant case strikingly similar to the traverse proceedings that occurred in *Kuerth*, we deem *Kuerth* applicable to the traverse claims raised in this appeal.

¶ 66                                C. IEPC's Condemnation Suit

¶ 67        Prior to reaching the merits of landowners' traverse claims, we note that in their initial brief to this court, landowners essentially argue that the trial court erred by granting summary judgment in IEPC's favor. We note, however, that landowners' various claims challenging the trial court's ruling are couched in terms of either (1) Aupperle's qualifications to provide expert opinion testimony on just compensation or (2) the credibility and admissibility of the just compensation valuations documented in Aupperle's report. For the reasons that follow, we decline to address those specific claims because we conclude that Aupperle's report was not properly before the trial court at the March 2015 hearing on IEPC's summary judgment motion.

¶ 68                        1. *Summary Judgment and This Court's Standard of Review*

¶ 69        "The purpose of a summary-judgment proceeding is not to try an issue of fact but, instead, to determine whether a genuine issue of material fact exists." *Evans v. Brown*, 399 Ill. App. 3d 238, 243, 925 N.E.2d 1265, 1270 (2010). "Summary judgment is properly granted when the pleadings, depositions, admissions, and affidavits on file, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Village of Bartonville v. Lopez*, 2017 IL 120643, ¶ 34. "In order to survive a motion for summary judgment, a [respondent] need not prove her case, but she must present a factual basis that would arguably entitle her to a judgment." *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12, 21 N.E.3d 684. We review *de novo* a trial court's ruling on a summary judgment motion. *Bartonville*, 2017 IL 120643, ¶ 34.

¶ 70                        2. *The Purpose of Illinois Supreme Court Rule 191(a) in a*
                                *Summary Judgment Proceeding*

¶ 71        The sole overarching issue throughout this litigation concerns IEPC's intent to acquire right-of-way and easement interests over certain real estate for the planned construction of the SAX project. To achieve that objective, IEPC attempted to negotiate with holdout landowners

regarding the fair-market value of its interest in their respective properties. As previously noted, in June 2014—after settlement negotiations with landowners failed—IEPC executed the eminent-domain authorization the Commission granted by filing condemnation complaints, which sought a jury's determination as to the just compensation for its interests in landowners' parcels. Although landowners filed a counterclaim on the issue of damages to the remainder of their respective properties following installation of the SAX project, that damage claim was merely a subcategory of the just compensation that a jury had yet to determine.

¶ 72     Thus, when IEPC filed its condemnation complaints in June 2014, the only issue to be decided concerned the fair-market value of IEPC's interests in landowners' properties—that is, the just compensation that IEPC owed to landowners for its interest in their respective parcels. Indeed, the primary goal in a partial condemnation—such as this one—"is to provide compensation that is 'just' in the sense that it places the landowner in the same economic position after the condemnation as before." *Koke Mill*, 312 Ill. App. 3d at 904, 728 N.E.2d at 785. "Given the technical and particularized process employed to calculate the just compensation that a condemnor should provide for its interest in a condemnee's property, a condemnation proceeding essentially becomes a contest on the credibility of the parties' experts." *Hoke*, 2017 IL App (4th) 150544, ¶ 108.

¶ 73     By filing its February 2015 motion for summary judgment on the issues of just compensation and damages to the remainder, however, IEPC requested that the trial court circumvent the usual fact-finding a jury performs, claiming that because no genuine issue of material fact existed, IEPC was entitled to judgment as a matter of law on its condemnation complaints. In support of its summary judgment motion, IEPC appended affidavits filed by its expert appraisers, Batis and Park. In its later reply to landowners' response, IEPC also noted that landowners failed to file any counteraffidavits.

¶ 74     When a party offers expert opinions in written form at the summary judgment stage, the writings in support of or in opposition to the motion, such as affidavits, must not only be sworn, but must also comply with Rule 191(a), which provides, in part, the following guidance:

> "Affidavits in support of and in opposition to a motion for summary judgment under section 2-1005 of the Code of Civil Procedure *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all documents upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013).

¶ 75     In *Robidoux v. Oliphant*, 201 Ill. 2d 324, 775 N.E.2d 987 (2002), the seminal case interpreting the scope of Rule 191(a), the supreme court provided two main points applicable to the instant case. The first point is that because an affidavit "serves as a substitute" for trial testimony, "it is necessary that there be strict compliance with Rule 191(a) 'to insure that trial judges are presented with valid evidentiary facts upon which to base a decision.' " *Id.* at 335-36, 775 N.E.2d at 994 (quoting *Solon v. Godbole*, 163 Ill. App. 3d 845, 851, 516 N.E.2d 1045, 1049 (1987)). The second point is that the affidavit filed in support of a motion for summary judgment must have attached thereto sworn or certified copies of all papers upon which the affiant relied. *Id.* at 343, 775 N.E.2d at 998. Because this second requirement "is

inextricably linked to the provisions requiring specific factual support in the affidavit itself," "[i]t is not a mere technical requirement." *Id.* at 344, 775 N.E.2d at 998.

¶ 76    In *Essig v. Advocate BroMenn Medical Center*, 2015 IL App (4th) 140546, ¶ 46, 33 N.E.3d 288, this court summarized the rationale underpinning the supreme court's guidance in *Robidoux* as follows:

> "At trial, an expert may give an opinion without first disclosing the facts underlying that opinion [citation] because the opposing party has the opportunity to cross-examine the expert as to the basis of his opinion. [Citation]. However, because the opportunity to cross-examine is not present when a party submits written opinions in the summary judgment context, Rule 191(a) essentially requires the affiant to provide his own cross-examination regarding the factual bases for his opinions."

¶ 77    "Given that cross-examination is unavailable as a means to test an affidavit, it is not surprising that the standard for admission of an affidavit in a summary judgment context would be higher than for the admission of an expert's opinion at trial." *Robidoux*, 201 Ill. 2d at 338, 775 N.E.2d at 995. Thus, "[a]n affidavit satisfies the requirements of Rule 191(a) if from the document as a whole it appears the affidavit is based on the personal knowledge of the affiant and there is a reasonable inference that the affiant could competently testify to its contents." (Internal quotation marks omitted.) *Madden v. F.H. Paschen/S.N. Nielson, Inc.*, 395 Ill. App. 3d 362, 386, 916 N.E.2d 1203, 1223-23 (2009). "[A]n expert's affidavit in support of or in opposition to a motion for summary judgment *must* adhere to the requirements set forth in the plain language of Rule 191(a)." (Emphasis added.) *Robidoux*, 201 Ill. 2d at 339, 775 N.E.2d at 995.

¶ 78    It is from this well-established foundation that we address landowners' overarching claim that the trial court erred by granting summary judgment in IEPC's favor.

¶ 79                            3. *The Trial Court's Grant of Summary Judgment*

¶ 80    In its February 2015 motion for summary judgment, IEPC included separate affidavits from its two experts, Batis and Park, who were experienced certified general real estate appraisers. In their respective affidavits, Batis and Park explained that they had performed an appraisal of the 18 parcels at issue that complied with the USPAP and Code of Professional Ethics of the Appraisal Institute. Attached as an exhibit to their affidavits was a detailed report listing the components of the appraisal process common to all of landowners' parcels. Each expert then prepared 18 supplemental reports that identified appraisal components tailored to the unique characteristics of each property. Thereafter, Batis and Park estimated the fair-market value for the permanent easement, temporary easement, and damage to the remainder to arrive at a just compensation calculation for each parcel. Batis and Park averred in their affidavits that they were competent to testify to any aspect of the appraisal process as documented in their general and supplemental reports.

¶ 81    For reasons we later explain, IEPC's inclusion of the Aupperle report in its motion for summary judgment was neither necessary nor appropriate.

¶ 82    In their March 2015 response, landowners argued generally that (1) the valuation opinions in the Aupperle report were credible and, thus, admissible and (2) the USPAP standard has not been adopted by Illinois. The sole attachment to landowners' response was the aforementioned October 2014 article written by Urbance. Landowners did not include the Aupperle report or

any counteraffidavits with their response. Landowners later supplemented their response with 173 pages of information, as earlier noted, but did not include any counteraffidavits. This comprises the "evidence" that was before the trial court on the issue of just compensation and damages to the remainder at the March 2015 hearing on IEPC's motion for summary judgment.

¶ 83    " 'When a party moving for summary judgment files supporting affidavits containing well-pleaded facts, and the party opposing the motion files no counteraffidavits, the material facts set forth in the movant's affidavits stand as admitted. [Citation.] The opposing party may not stand on his or her pleadings in order to create a genuine issue of material fact. [Citation.]' " *E.O.R. Energy, LLC v. Pollution Control Board*, 2015 IL App (4th) 130443, ¶ 97, 29 N.E.3d 691 (quoting *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 49, 2 N.E.3d 1052). We reiterate that because an affidavit submitted in a summary judgment proceeding serves as a substitute for trial testimony, strict compliance with Rule 191(a) is necessary to ensure that trial courts are presented with valid evidentiary facts upon which to base a decision. *Lucasey v. Plattner*, 2015 IL App (4th) 140512, ¶ 19, 28 N.E.3d 1046.

¶ 84    With the exception of Aupperle's report, which IEPC included only to attack, we conclude that IEPC fully complied with Rule 191(a) by filing supporting affidavits from its two experts, which contained well-pleaded facts regarding the just compensation IEPC was required to pay landowners in exchange for its property interests as well as sworn or certified copies of all documents upon which Batis and Park relied. We conclude further that landowners' response, which they later supplemented, failed entirely to comply with the requirements of Rule 191(a). Indeed, even Aupperle's report, which landowners (1) disclosed pursuant to Illinois Supreme Court Rule 213(f)(3) (eff. Jan. 1, 2007) and (2) argued was admissible in their response to IEPC's motion for summary judgment, was not properly before the trial court at the March 2015 hearing on IEPC's summary judgment motion. We note that in their reply brief, landowners assert that Aupperle's report was properly before the trial court because it was the "centerpiece" of IEPC's motion for summary judgment. As we noted in *Essig*, 2015 IL App (4th) 140546, ¶ 51, 33 N.E.3d 288, however, "the contents of Rule 213(f) disclosures are not *evidence* for purposes of summary judgment because Rule 213(f) disclosures are not pleadings, depositions, admissions, or affidavits." (Emphasis in original.) "Notably, Rule 213(f) requires the *party*—not the expert himself—to disclose the substance of the expert's anticipated testimony." (Emphasis in original.) *Id.* ¶ 52.

¶ 85    While our analysis indicates approval of the trial court's grant of summary judgment in IEPC's favor, we are not at this point affirming the trial court's judgment, for reasons we will later explain.

¶ 86                                D. Landowners' Traverse Motion

¶ 87    We previously provided a summary of our decision in *Kuerth*, which we deemed applicable to landowners' claims regarding the November 2014 traverse hearing at issue in this case. We need not revisit (1) the legislature's rationale for enacting a new statutory section to govern eminent-domain issues, (2) the history and operation of rebuttable presumptions, (3) the amount of evidence necessary to rebut the type of presumption at issue, or (4) the substantial deference the trial court must give to the Commission's good-faith finding—which is a prerequisite for granting an entity eminent-domain authority. For our purposes, it is sufficient to reiterate our overarching holding in *Kuerth*, as follows:

"Accordingly, based on the aforementioned recitation of the purpose of a traverse hearing and the plain language of section 5-5-5(c) of the Act, we hold that when the Commission granted IEPC a certificate in good standing to construct the SAX project and, later, granted IEPC eminent-domain authority to complete the SAX project, IEPC enjoyed two rebuttable presumptions—that is, that IEPC's interest in landowners' respective properties was (1) primarily for the benefit, use, or enjoyment of the public; and (2) necessary for a public purpose. For reasons that we have already mentioned, in addition to those two rebuttable presumptions, the Commission's determination that IEPC engaged in good-faith negotiations, which was a necessary finding to its grant of eminent-domain authority in IEPC's favor, warrants substantial deference by the trial court. Thus, after filing their respective traverse motions, landowners were entitled to present relevant evidence to rebut and refute, respectively, those three issues." *Kuerth*, 2016 IL App (4th) 150519, ¶ 148, 69 N.E.3d 287.

¶ 88                                    1. *The Standard of Review*

¶ 89        When reviewing the denial of a traverse motion, this court considers whether the trial court's determination was against the manifest weight of the evidence. *City of Chicago v. Zappani*, 376 Ill. App. 3d 927, 931, 877 N.E.2d 17, 21 (2007). "A trial court's judgment is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *City of Naperville v. Old Second National Bank of Aurora*, 327 Ill. App. 3d 734, 739, 763 N.E.2d 951, 955 (2002).

¶ 90                        2. *The Propriety of the Trial Court's Traverse Judgment*

¶ 91        In their supplemental brief to this court, the parties concentrate the majority of their arguments unnecessarily on the propriety of the trial court's judgment during the October 2014 hearing on landowners' request to produce documents, in which the court denied landowners' request. By doing so, however, the parties have misconstrued the narrow issue before us—that is, the propriety of the trial court's November 2014 judgment, which denied landowners' traverse motion. At that hearing, the court, relying on its earlier ruling at an October 2014 hearing involving similarly situated landowners, ruled essentially that landowners were estopped from challenging IEPC on the issues of public use and public necessity because those issues had been previously litigated before the Commission and affirmed by this court. The court also rejected landowners' good-faith claim, finding essentially that IEPC established that presumption, which—as we have held—was entitled to substantial deference. We note that the trial court's ruling was based, in part, on IEPC's claim that this court's decision in *Koke Mill* stood for the proposition that a traverse motion is essentially a motion to dismiss under section 2-619(a)(9) of the Civil Code.

¶ 92        We reject the notion that *Koke Mill* stands for the broad proposition that *all* traverse hearings are akin to a motion to dismiss under section 2-619 of the Civil Code. *Koke Mill*, which was decided 7 years before the legislature's January 2007 enactment of the Eminent Domain Act and 15 years before our aforementioned overarching holdings in *Kuerth*, involved the exercise of municipal condemnation powers under article VII of the Civil Code, which has since been repealed. Specifically, *Koke Mill* involved a landowner's challenge to the City of Springfield's power to condemn private property for the public purpose of widening a city road. *Koke Mill*, 312 Ill. App. 3d at 902, 728 N.E.2d at 783. We affirmed the trial court's denial

of Koke Mill's traverse motion because "Koke Mill did not support its [traverse motion] with any evidence of the [City of Springfield's] alleged lack of [a] good faith [offer]." *Id.* at 908, 728 N.E.2d at 787.

¶ 93 Here, the Commission, with the presumed expertise that it possesses as an agency, exercised its condemnation powers for the purpose of acquiring private property for private ownership and control, which is governed by section 5-5-5(c) of the Eminent Domain Act. See 735 ILCS 30/5-5-5(b), (c) (West 2014) (promulgating different standards when a condemning authority seeks to acquire property for public use versus private use, respectively). We reject IEPC's interpretation of *Koke Mill* and reiterate and reaffirm our holding that a traverse hearing is a limited proceeding that affords a landowner the first and only opportunity to challenge a condemnor's authority and, thus, "is akin to a hybrid proceeding in which specific presumptions must be rebutted by landowners challenging the condemnation filing at issue." *Kuerth*, 2016 IL App (4th) 150519, ¶ 169, 69 N.E.3d 287.

¶ 94 In this regard, our narrow scope of review concerns whether the trial court properly afforded landowners their *only* opportunity to challenge the Commission's condemnation powers. We conclude that the trial court did not. In this regard, we provide the following passage from our decision in *Kuerth* that fully applies to the instant case:

"The Commission's July 2009 grant of a certificate in good standing and April 2014 grant of eminent-domain authority and the rebuttable presumptions those decisions generated in IEPC's favor were merely the first steps in this process. The trial court's dismissal of landowners' traverse motions effectively deprived landowners of exercising the option of presenting relevant evidence to (1) rebut the presumptions of public use and public necessity that IEPC possessed when it filed its condemnation suit and (2) refute the Commission's determination that IEPC had engaged in good-faith negotiations when the Commission granted IEPC eminent-domain authority." *Id.* ¶ 151.

¶ 95 Accordingly, we vacate the trial court's denial of landowners' respective traverse motions and remand for limited proceedings.

¶ 96 Although we have also expressed our approval of the trial court's grant of summary judgment in IEPC's favor, we have not yet affirmed, reversed, or modified the trial court's judgment. Our ultimate determination in this case will occur only after the trial court conducts a proper traverse hearing in accordance with this court's direction, the trial court certifies the record to this court, and the parties have had an opportunity to supplement their briefs to this court with regard to the trial court's expedited traverse ruling. Accordingly, because no judgment has been rendered by this court, (1) no mandate need issue and (2) this court retains general jurisdiction. More important, upon the filing of this opinion, the trial court is vested with the authority to conduct an expedited hearing for this limited purpose in accordance with the following directions we now provide. See *id.* ¶¶ 153-58.

¶ 97                                          E. Directions on Remand

¶ 98 As previously noted, the issues presented in the instant case are similar to those we addressed in *Kuerth*. After this court vacated the trial court's denial of landowners' traverse motions in *Kuerth*, we provided the trial court comprehensive guidance regarding the appropriate procedure to employ on remand. *Id.* ¶¶ 164-80. Given the length of time and amount of resources already expended in litigating the construction of the SAX project, and in

the interest of judicial economy and finality, we provide the following directions for remand in this case.

¶ 99                           1. *Limited Scope of the Traverse Hearing*

¶ 100        As previously noted, in June 2014—when IEPC began filing its condemnation complaints against landowners' respective properties—IEPC enjoyed the rebuttable presumptions that its interests in landowners' respective tracts of land were (1) primarily for the benefit, use, or enjoyment of the public and (2) necessary for a public purpose. In addition to those presumptions, the Commission determined that eminent-domain authority in IEPC's favor was warranted because good-faith negotiations between IEPC and landowners had failed. Thus, landowners were entitled to present relevant evidence to rebut these specific presumptions and to refute the good-faith finding. We note, however, that in their respective July and August 2014 traverse motions, landowners disregarded the limited scope of the traverse hearing by attempting to litigate anew the Commission's certification and eminent-domain decisions, which this court affirmed on appeal. In this regard, landowners claim that (1) IEPC is "not properly vested with authority to acquire" their tracts of land, (2) the SAX project did not "constitute a common carrier because of restrictions on access to the proposed pipeline," (3) the Commission's grant of eminent-domain authority did not apply to the current SAX pipeline project, and (4) IEPC did not possess the legal authority to construct the SAX pipeline project. Such issues are not the proper subjects of a traverse hearing, and on remand, the trial court should decline to consider them.

¶ 101        Based on the aforementioned discussion of the proper scope of a traverse hearing, the trial court on remand should consider only two matters, which are landowners' claims challenging (1) the rebuttable presumptions of public use and public necessity and (2) the Commission's determination as to good faith, as generally set forth in paragraphs 12 through 15 of landowners' September 2014 traverse motion.

¶ 102                          2. *Discovery and Proceedings on Remand*

¶ 103        Consistent with the limited nature of a traverse motion as well as our limited remand, we direct the trial court to assume control of the discovery proceedings in the instant case by requiring any discovery request to set forth with specificity (1) the information the party seeks, (2) the alleged source of that information, and (3) the relevance of the information sought, given the limited remand in this case. The aforementioned listing, however, does not preclude the court from imposing further discovery requirements.

¶ 104        The trial court should determine whether any discovery sought is appropriate and should deny any request to depose or submit interrogatories that seek information the court deems irrelevant or that already exists in the record or is in the possession of the party making the discovery request. If the court determines that discovery—strictly limited to the aforementioned issues—is warranted, it shall actively supervise to ensure discovery occurs in an efficient and expeditious manner.

¶ 105        Given the extensive litigation that has already occurred in this matter and our explicit direction that the trial court conduct an expedited traverse hearing limited to the claims at issue, the court should inquire whether any information sought by landowners through discovery already exists in the public record in this matter. For instance, in *Intervenors II*, in which this court affirmed the Commission's grant of eminent-domain authority to IEPC, John

McKay, IEPC's manager of land services, provided detailed testimony about the procedures IEPC employed to identify, contact, educate, and negotiate in good faith the offers IEPC extended to recalcitrant landowners. See *Intervenors II*, 2015 IL App (4th) 140592-U, ¶¶ 23-26 (summarizing McKay's testimony before the ALJ). Landowners, who participated in these proceedings, were permitted to cross-examine McKay. Thus, any claim by landowners that they need to depose McKay to refute the presumption of good faith should be met with skepticism by the trial court. The court should permit IEPC to challenge landowners' additional requests for discovery by demonstrating that the information sought is either irrelevant to the traverse proceedings or cumulative because the additional discovery sought already appears in the record or is in the possession of landowners or their counsel.

¶ 106    On remand, the trial court should conduct a two-stage traverse hearing. At the first stage, the court should focus solely on whether landowners can present (1) clear and convincing evidence to rebut the presumptions of public use and public necessity and (2) sufficient evidence to refute the substantial deference afforded the Commission's good-faith determination. If the court determines that landowners have done so, then the court should proceed to the second stage, which would contemplate a further hearing in which the parties could present evidence in support of their respective positions.

¶ 107    We direct the trial court to schedule and otherwise supervise discovery and conduct further proceedings regarding a traverse hearing in an expedited fashion. If, in the court's judgment, landowners fail to (1) rebut the presumptions of public use and public necessity or (2) successfully refute the Commission's good-faith determination, the court should so rule as to those specific issues, deny landowners' traverse motion, certify the record, and return the matter back to this court. If landowners present sufficient evidence to rebut the presumptions or to refute the good-faith determination, the court should then conduct a further hearing as to those claims on the traverse motion.

¶ 108    If the court finds in favor or one or more landowners, then it should enter an order denying IEPC's condemnation motion as to that landowner or those landowners. Conversely, if the court rules in IEPC's favor following the traverse hearing, it should enter an order to that effect. Regardless of the decision rendered, if a traverse hearing is conducted, the court should again certify the record and return this matter to this court so that we may then resolve this appeal.

¶ 109    If the trial court finds that landowners have overcome the first-stage hurdle, then second-stage proceedings regarding the traverse hearing shall be tried by the court instead of a jury. In this regard, we note that section 10-5-5 of the Eminent Domain Act, which is entitled, "Compensation; jury," states that "[w]hen compensation is so made by the condemning authority, any party, upon application, may have a trial by jury to ascertain the just compensation to be paid." 735 ILCS 30/10-5-5(a) (West 2014). No such provision entitling landowners to a jury determination in a traverse hearing appears in section 5-5-5 of the Eminent Domain Act, which governs traverse hearings and appears immediately preceding section 10-5-5 of the Eminent Domain Act. See *Hamilton v. Conley*, 356 Ill. App. 3d 1048, 1056, 827 N.E.2d 949, 957 (2005) (a tenet of statutory construction provides that if one section of a statute contains a specific provision, the absence of that same provision from a similar section is significant to show a different legislative intent for the statutory sections at issue). Further, our research has disclosed no case in which the issues presented in a traverse motion were resolved by a jury.

¶ 110                                3. *The Timeline on Remand*

¶ 111          As we noted in *Kuerth*, 2016 IL App (4th) 150519, ¶ 177, 69 N.E.3d 287, the appellate court, in other contexts, has remanded a cause to conduct an expedited hearing on a limited issue and imposed specific directions regarding when the trial court was expected to accomplish the appellate court's direction. For example, in *People v. Bohanan*, 243 Ill. App. 3d 348, 612 N.E.2d 45 (1993), this court remanded the matter to the trial court for the limited purpose of conducting an expedited hearing in accordance with *Batson v. Kentucky*, 476 U.S. 79 (1986). In so doing, the appellate court provided the following directions on remand:

> "Upon completion of the preceding steps, the trial court must make both credibility and factual determinations based on the proffered evidence. These findings, including the record, shall be filed with the clerk of this court within 60 days of the filing of this opinion. This court retains jurisdiction for the purpose of reviewing the trial court's determinations pursuant to *Batson*. Both defendant and the State will be permitted to submit supplemental briefs relative to this issue in this court." *Bohanan*, 243 Ill. App. 3d at 352, 612 N.E.2d at 48.

See also *People v. Fellers*, 2016 IL App (4th) 140486, ¶ 36 (while retaining jurisdiction over the case, the appellate court remanded to the trial court for the limited purpose of conducting an appropriate hearing on the defendant's ineffective-assistance-of-counsel claim); *Fleming v. Moswin*, 2012 IL App (1st) 103475-U, ¶¶ 45-46, 976 N.E.2d 447 (while retaining jurisdiction over the case, the appellate court remanded to the trial court for the limited purpose of conducting a *Batson* hearing within 60 days and requiring the parties to file responses within 14 days of the trial court's ruling on remand).

¶ 112          Unlike *Bohanan*, we prefer to forgo mandating that the trial court conduct the traverse hearing within a specific time frame. Instead, we leave these timing issues to the trial court's discretion. However, given this court's direction that the trial court should conduct an expedited hearing limited to landowners' traverse motions, we expect that the trial court will do so at the earliest possible opportunity.

¶ 113          Because we have concluded that the trial court failed to conduct a proper traverse hearing, we vacate the court's traverse order and remand this cause for the limited purpose of conducting an *expedited* traverse hearing in compliance with this court's aforementioned directions. In so ordering, this court retains jurisdiction to review the trial court's ruling following remand. See *People v. Garrett*, 139 Ill. 2d 189, 195, 564 N.E.2d 784, 787 (1990) ("The appellate court is empowered under Rule 615(b) to remand a cause for a hearing on a particular matter while retaining jurisdiction.").

¶ 114          Within 21 days following the trial court's certification of the record to this court, any party who is aggrieved by the trial court's rulings on remand may submit to this court a supplemental brief, addressing any issues related solely to those rulings. Thereafter, the opposing party or parties shall have 21 days to file any response. This court will not grant any request for an extension of time to file supplemental briefs. Arguments on issues not directly related to the traverse hearing on remand may not be raised without this court's permission. In due course, this court will issue its decision on all issues raised in this appeal.

## III. CONCLUSION

For the foregoing reasons, we vacate the trial court's traverse judgment and remand with directions for further proceedings consistent with the views expressed herein.

Vacated; cause remanded with directions.